## JAMES ROBERTSON *v.* THE STATE.

1. CRIMINAL LAW. *Voluntary Manslaughter.* A conviction for voluntary manslaughter cannot be sustained, where the facts set out in the bill of exceptions leaves it doubtful whether the act from which the death resulted was accidental or designed.

2. SAME. *Same. Negligent use of pistol.* The negligent use of a loaded pistol by a person who believed it to be empty, without any intention to do harm, is not sufficient to turn an accidental killing into the crime of voluntary manslaughter. Though it would be otherwise if the act were done under such circumstances as to make it an assault.

### FROM DYER.

Appeal in error from the Circuit Court of Dyer county. J. T. CARTHEL, J.

RICHARDSON & WATKINS for Robertson.

ATTORNEY GENERAL LEA for the State.

COOPER, J., delivered the opinion of the court.

The plaintiff in error was indicted for the murder of Anderson Fowlkes on the 14th of July, 1877. He has been thrice tried and convicted, under this indictment, of voluntary manslaughter, being acquitted on the first trial of the higher grades of homicide.

The first two verdicts were set aside by the presiding Judge, on the motion of the defendant below, and a new trial awarded. Judgment having been rendered on the last verdict, the prisoner appealed in error.

The defendant, the deceased, Andrew Harris and his wife Betsey, and George Harris, all persons of color, were in the employ of one Bright Harris, in threshing wheat. On the evening of the 14th of July, they were directed by Bright Harris, who had occasion to leave home, to "empty up" the wheat. They were at the house of Andrew Harris in the evening between 8 and 9 o'clock, and the prisoner got a case knife, and said he would cut the strings of the bags if the other men would empty up the wheat. Thereupon a playful altercation arose as to which of them should play the boss, while the others did the work. Andrew Harris got the pistol of Bright Harris, which was under the pillow of the bed, and flourished it about for several minutes. Then he surrendered it to the prisoner, who said he would be boss, but the pistol was put back under the pillow. Then the 'other

three negroes took the prisoner and held him down in play, while Andrew Harris spanked him with a little piece of plank. The prisoner complained that the deceased hurt his mouth, and was then allowed to get up. He went to the bed, took the pistol and came with it first to Andrew, and asked him what he had hit him for. Upon his reply that he had not hit him, he went to George and asked the same question, receiving the same reply. He then went to the deceased, with the same question, who returned the like answer, to which the defendant replied, yes you did, and I am going to shoot you, pulled the trigger and the pistol went off, the ball passing into the head of the deceased over the eye, and causing his death about daylight the next morning.

All the witnesses agree in saying that during the scene Betsey, the wife of Andrew, had told the others not to be afraid, that the pistol was not loaded.

They further agree that they were all in fun, and Betsey, in her testimony, says she thought so until the shot was fired. George's testimony is similar in effect, for he states nothing that would indicate the contrary.

Andrew and his wife both say that when the defendant complained that the deceased hurt his mouth, it was with an oath, and Andrew adds, that he did not think the defendant was mad until he said that.

Upon this state of facts, taking the testimony of the only three witnesses present and duly weighing it, the conclusion would be irresistible that no crime at all was committed.

The witnesses concede that the prisoner knew

who struck him, when he was down, and there is nothing to indicate that the prisoner was hurt by the deceased, or that the complaint about his mouth, was anything more than a ruse to obtain his release. The use of the pistol was a repetition of the previous play, and pulling the trigger a part of the pantomime, brought about by the assurances of Betsey that the pistol was not loaded.

But Andrew says, that after his wife told the defendant that the pistol was not loaded, the defendant took it to the light on the mantel-piece to examine it, and said, yes, by God, there is one load in it.

George deposes to the same fact, except that there was only one light in the room and that it was held by Betsey. Betsey herself says she held no light in her hand, nor does she testify to the fact stated by the other witnesses, that the defendant held the pistol to the light and said that there was one ball in it.

The defendant and the deceased lived together, and there is no evidence of any enmity between them.

Under these circumstances, it is not absolutely certain that the incident, thus differently deposed to by two of the witnesses and not seen or heard by the other, ever took place; and even if it did, it may have been merely a part of the defendant's acting. When the wife said don't be afraid, the pistol is not loaded, the defendant may have held the pistol toward his eyes and remarked, not as a fact which he thus ascertained, but to make pretense, there is one load in it.

A conviction for voluntary manslaughter has been held bad by this court, where the facts set out in the bill of exceptions left it doubtful whether the act from which the death resulted was accidental or designed. *Anderson* v. *State*, 3 Heis., 86.

The court charged the jury: "If you find that the prisoner and deceased, with others, were engaged in a frolic, and were using the pistol in their sport, and that they all believed the pistol was empty; and if the prisoner honestly so believed, and merely in sport presented the pistol, and it went off without negligence on his part, and no wrong and no harm was intended by the prisoner; if you find this to be true, then the defendant should be acquitted, if you find that the prisoner was guilty of no negligence in using the pistol; but if negligence existed, you should not acquit."

Again he says: "If you find from the testimony, that the prisoner and the deceased were in the same room together, and that the prisoner had a pistol which he did not know or believe was loaded, but was in fact loaded, and presented the pistol at the deceased, the deceased not knowing the pistol was empty, in a threatening, and negligent and careless manner, and indicating by words and by his manner that he was intending to shoot him, and did in fact fire it and killed the deceased, it would not be a chance medley or homicide by misadventure, but would be a case of voluntary or involuntary manslaughter. For a negligent and careless use of a pistol, if proven, would be unlawful or an unlawful act."

Again he says: "If· you find from the testimony, that the prisoner took the pistol, believing it was empty, and presented it at the deceased, near to the deceased, who did not know it was loaded, in a threatening manner, and in a careless and negligent manner, and indicating by words and acts at the time that he intended to kill the deceased, and did in fact fire it, and kill him, without intending to do so, then, in such event, the prisoner would be guilty of involuntary manslaughter. Such a use of a loaded pistol, if proven, would be an unlawful act, whether the prisoner knew or believed it to be loaded or not."

The statute defines involuntary manslaughter to be, the unlawful killing of another, without malice, in the commission of an unlawful act. Code, section 4603.

And the burden of the charge is, that the negligent use of a loaded pistol by a person who believed it to be empty, and without any intent to do harm, would be an unlawful act, and thereby turn an accident into a crime. In this there was no error. Negligence in the performance of a lawful act, and *a fortiori*, negligence in sport, may indeed, make the act unlawful, if the person see danger probably arising therefrom to others and yet persists. See *Lee* v. *State*, 1 Col., 62. But the careless use of a dangerous article or instrument in ignorance or with a laudable purpose, is not necessarily unlawful. *Ann* v. *State*, 11 Hum., 159. Mere negligence, not only with no intent to do harm, but under the belief that no harm was possible, is clearly wanting in every essential element of crime.

The judgment must be reversed, and the cause re-manded for a new trial.

It is proper to add, in justice to the learned Circuit Judge whose instructions were probably based on that idea, that if the act of the prisoner had been done under such circumstances as to have amounted to an assault on the deceased, then it would have been an unlawful act, and rendered him guilty of manslaughter.

Thus if the defendant had in a threatening manner, and intending to frighten the deceased, presented a pistol, purporting to be loaded, at him, the latter not knowing or believing it to be empty, it would have been an assault, and this, perhaps, even if the prisoner supposed that the pistol was unloaded. *State* v. *Smith*, 2 Hum., 457. It would be otherwise if the act was without any real intention to frighten, both parties knowing it to be in fun and believing the pistol to be unloaded.