## HURT *v.* STATE

### (*Jackson,* April Term, 1947.)

Opinion filed May 3, 1947.

R. M. Murray, of Huntington, for plaintiff in error.

Allison B. Humphreys, Jr., Assistant Attorney General, for the State.

Mr. Justice Gailor delivered the opinion of the Court.

Defendant appeals from conviction of involuntary manslaughter and sentence to a year and a day in the penitentiary for the offense. He assigns error on (1) the sufficiency of the evidence, (2) a part of the Trial Judge's charge to the jury, and (3) the qualification of a juror who had been, before the trial, adjudged *non compos mentis*.

Between 8:30 and 9 p. m., on May 19, 1945, defendant was driving his Buick car southwest òn the McKenzie-Milan Highway within the corporate limits of the town of Trezevant. As he approached the intersection of the highway with the road to McLemoresville, he pulled to his left to pass a Ford car driven by State's witness, L. M. Jones, and after passing the Ford and before he had regained the right side of the highway, defendant's car collided with a horse-drawn buggy which was moving east on the McLemoresville road across its intersection with the highway. Traffic on the highway had the right of way and there were "stop signs" against traffic on the McLemoresville road.

The buggy was being driven by a negro, Buck Adkisson, who was a kinsman of defendant, and Nina Adkisson, Buck's wife, with a child, were riding with him in the buggy at the time of the collision. Buck Adkisson and his wife sustained injuries from which they shortly died, and it is for the killing of Buck Adkisson that the defendant was indicted and tried.

As we find it necessary to reverse the judgment and remand the case for a new trial, we think it improper to analyze the evidence in detail or to discuss discrepancies in the testimony of the various witnesses.

The theory of the State's case and the obvious reason for the criminal prosecution was the idea that the

defendant was driving while intoxicated, or while under the influence of intoxicating liquor, and that the inebriated condition of the defendant was the cause of the homicide.

A careful study of the evidence discloses that there was not a single witness for either party who testified that the defendant was drunk or under the influence of an intoxicant at the time of the collision. The officers who arrested the defendant, testified that they smelled liquor on his breath, but this is not the essential question. The statute does not prohibit the driving of an automobile with a liquor breath, but for obvious reasons, forbids such driving when the driver is not in full possession of his faculties because he is "under the influence of an intoxicant." Code 1932, sec. 10827. The sheriff, himself, testified positively that the defendant was not drunk.

The State's strongest eye witness, a white man, L. M. Jones, whose car the defendant passed on the highway, immediately before the accident, showed some zeal to help the State's case. He made his own measurements of the physical factors and evidently took pains to prepare his testimony. However, he testified positively that the defendant was not under the influence of intoxicating liquor when the defendant got out of his car and assisted the injured couple immediately after the accident. The defendant introduced a number of witnesses who testified that defendant was not intoxicated before or immediately after the accident. Among these witnesses was a former employer of defendant, L. E. Jones, who was at the scene of the accident five minutes after it happened, and helped defendant to get an ambulance. He testified positively that the defendant was not at the time intoxicated nor under the influence of an intoxicant. We conclude from a careful consideration of all the evidence, that there was no evidence

.to support the charge that defendant was driving while intoxicated or while under the influence of an intoxicant.

Since, therefore, the conviction cannot be sustained on the proof of drunken driving, the conviction can only be sustained within the limits of the indictment, by proof that defendant was guilty at the time of the collision, of such "gross, culpable and reckless" carelessness as constituted criminal negligence.

■  The only negligence charged or proved was that defendant was driving (a) at excessive speed under the circumstances, (b) on the left side of the road. Under the attendant circumstances here, such driving does not constitute conduct "*malum in se*," but is merely "*malum prohibitum*." In a case where these identical charges of negligence were under consideration, it was said: "See *Holder* v. *State*, 152 Tenn. 390, 277 S. W. 900, where the authorities are reviewed and the distinction is pointed out between unlawful acts *malum in se* and those merely *malum prohibitum*, to which driving beyond the speed limit fixed by law belongs." *Hiller* v. *State*, 164 Tenn. 388, 392, 50 S. W. (2d) 225, 227.

■ ■  Since defendant was guilty of conduct only "*malum prohibitum*" it was necessary for the State to prove beyond reasonable doubt that defendant was guilty of such gross and culpable negligence as evidenced a reckless disregard of the safety of other users of the highway, so that a homicide was a natural and probable result of his negligence. *Copeland* v. *State*, 154 Tenn. 7, 11, 285 S. W. 565, 49 A. L. R. 605. In short, criminal intent is supplied by the commission of an act "*malum in se*," but it must be proved to convict successfully for an act which is merely "*malum prohibitum*." .*Keller* v. *State*, 155 Tenn. 633, 636, 299 S. W. 803, 59 A. L. R. 685 citing

*Holder* v. *The State*, 152 Tenn. 390, 277 S. W. 900; *Copeland* v. *The State, supra.*

█ We recognize the rule that contributory negligence of the deceased Adkissons is not a defense (*Lauterbach* v. *State*, 132 Tenn. 603, 606, 179 S. W. 130), but since the acts of defendant were merely "*mala prohibita*," we may consider the conduct of deceased immediately prior to the collision to determine whether such conduct helps solve the ultimate and determinative question of the collision as being the result of the criminal negligence of the defendant or a mere misadventure. In an opinion on an identical question, Cook, J., said for this Court: "The contributory negligence of the boy would not relieve Copeland of the consequence of his unlawful act. *Lauterbach* v. *State*, 132 Tenn. [603,] 606, 179 S. W. 130. But the conduct of the boy was entitled to consideration in determining whether, under the circumstances, Copeland's negligence was the proximate cause of death, or whether death resulted from an unavoidable accident." *Copeland* v. *State*, 154 Tenn. 7, 10, 11, 285 S. W. 565, 566, 49 A. L. R. 605.

█ In the present case, the evidence is undisputed that cars on the McKenzie Milan Highway had the right-of-way over users of the road to McLemoresville, on which deceased was driving his buggy eastwardly. There were "stop signs" on the east and west edges of the highway to announce this fact. The undisputed evidence of the State as well as defense witnesses is that in spite of the fact that the lights of the approaching automobiles were plainly visible to Adkisson, and in spite of the fact that he had no lights on his buggy, Adkisson, without obeying the "stop signs," drove his buggy onto the highway in front of the oncoming automobiles of L. M. Jones as well as that of the defendant.

The case cannot be distinguished, we think, from that of *Copeland* v. *State, supra.* We reach the same result here as was reached there, and on the grounds set out on pages 11 and 12 of 154 Tenn., on page 566 of 285 S. W. Here, as we have stated, the whole theory of the prosecution was that the defendant was guilty of drunken driving. This theory also dominated the Trial Judge's charge to the jury. We think that as in the *Copeland case*, the defendant was entitled to a fuller explanation of the law governing the type of involuntary manslaughter proximately caused by gross and culpable negligence but without the factor of drunken driving. This is really the purport of the fourth assignment of error. Although we think the definition of involuntary manslaughter as given by the learned Trial Judge was correct (*Lee* v. *State*, 41 Tenn. 62, we think as we have said that the jury should have had a fuller and further explanation of involuntary manslaughter as that offense was defined in *Copeland* v. *State, supra,* following *Holder* v. *The State*, 152 Tenn. 390, 277 S. W. 900.

■■ One further matter presented by the assignments of error deserves some comment. One of the jurors was an adjudged *non compos mentis*, and his disability had not been removed at the time of his service as a trial juror. We bear in mind the rule recently made in *Durham* v. *State*, 182 Tenn. 577, 580, 581, 188 S. W. (2d) 555, 160 A. L. R. 746, that such disqualification is *propter defectum* and objection comes too late when made for the first time in motion for a new trial unless actual prejudice or bias is shown. Under this rule, the disqualification of this juror would not by itself justify a reversal, but we consider it in conjunction with other matters dis-

cussed in this opinion, as showing whether defendant had a fair trial in the lower Court.

We think he did not, and for the reasons stated, the first three assignments of error are sustained, the judgment is reversed and the case is remanded.

All Justices concur.