*WEAVER *v.* STATE.

(*Knoxville,* September Term, 1947.)

Opinion filed November 29, 1947.

———
*See Trentham v. State, p. 271, supra.

JENKINS & JENKINS, of Knoxville, for plaintiff in error.

NAT TIPTON, Asst. Atty. Gen., for the State.

MR. JUSTICE GAILOR delivered the opinion of the Court.

Defendant appeals from conviction of involuntary manslaughter and sentence to a term of imprisonment of not more than two years in the penitentiary.

The only assignments of error are on the facts. Defendant insists that the evidence is insufficient to support his conviction of crime.

The facts present a highway tragedy in which defendant, while driving his automobile south on the old Andersonville Pike in Knox County, struck and killed Robert Stanley, a 15-year-old boy, who was riding on a "motor scooter" north on the highway. The accident occurred in daylight between 5:00 and 5:30 p.m. in March, 1946, at a point on the highway where, according to the State, the vision of the automobile driver was unobscured for at least 300 feet. Defendant testifies, however, that the collision occurred immediately after he had rounded a curve and came suddenly upon the boy as the latter approached rapidly in the center of the road.

No eye-witness testified for the State and the case for the prosecution is made out entirely by circumstantial evidence. It is insisted by the State that red paint from the "motor scooter" and skid marks of the tires of the automobile mark the scene of the accident. The "scooter" was dragged under the bumper of the auto-

mobile, after the collision, for a distance of 40 to 44 feet from the point of impact to the point where the automobile was stopped partially off the paved surface on defendant's left (East) side of the highway.

Four State's witnesses testify that there was a dent or "dug-out place" in the highway which immediately after the accident, appeared to have been freshly made, and from this circumstance they infer that the "dug out place" marked the exact position of the "scooter" at the time it was struck. The defendant denied that there was such a "dug-out place" in the highway when he visited the scene two days after the accident. This dug-out place was some 30 inches from the eastern edge of the paved surface of the highway, and if it marks the point of impact, it would force the conclusion that at the time he struck the "scooter," the defendant was driving far over on his left, and "wrong" side of the highway. Then from the fact that the defendant was proceeding uphill at the time of the accident, and after the impact, dragged the "scooter" some 40 or 44 feet before the automobile was stopped, the State insists that at the time the defendant was driving at excessive speed. The State thus makes out a violation of Code sec. 2682 and the defendant's guilt of "reckless driving."

█ It is elementary that to support a conviction of crime, the accused must be guilty of negligence in a higher and grosser degree than is sufficient to support a judgment in a civil case. This, the State admits, and cites and quotes from the opinion in *Potter* v. *State,* 174 Tenn. 118, 127, 124 S. W. (2d) 232, 236:

"The test appears to be whether or not the driver, violating the highway statute in the particular above considered, does so consciously, or under circumstances which would charge a reasonably prudent person with ap-

preciation of the fact and the anticipation of consequences injurious or fatal to others.''

■ ■ This undoubtedly is a sound expression of the rule of law which has controlled our cases involving criminal negligence with an automobile as the instrument. It is so pertinent to inquire what evidence there is in the present record that the defendant, at the time of the accident, was driving his automobile so negligently as to justify a conclusion that he was driving ''consciously, or under circumtances which would charge a reasonably prudent person with appreciation of the fact and the anticipation of consequences injurious or fatal to others,'' and so that a homicide was ''the natural and probable result of'' his negligence. *Copeland* v. *State,* 154 Tenn. 7, 11, 285 S. W. 565, 566, 49 A. L. R. 605. Defendant's driving at excessive speed on the left of the center line of the road was conduct only *malum prohibitum. Holder* v.*State,* 152 Tenn. 390, 277, S. W. 900; *Hiller* v. *State,* 164 Tenn. 388, 392, 50 S. W. (2d) 225; *Hurt* v. *State,* 184 Tenn., 608, 201 S. W. (2d) 988, 990. So that the negligence must be reckless and wanton to supply the element of criminal negligence necessary to support a conviction of involuntary manslaughter. *Keller* v. *State,* 155 Tenn. 633, 636, 299 S. W. 803, 59 A. L. R. 685; *Holder* v. *State, supra; Hurt* v. *State, supra.*

As stated, the defendant, who was corroborated by his 13-year-old son, a passenger in defendant's automobile at the time, testified that the collision was unavoidable; that he rounded a curve at a lawful speed of 30 to 35 miles per hour, and met deceased who approached in the center of the road at a rapid rate of speed; that defendant applied his brakes so violently that he threw his son against the windshield and himself against the steering wheel;

and that automobile, nevertheless, collided with the "scooter," striking it at about the left headlight of the automobile; that the "scooter" being caught under the left front bumper and dragged by the automobile, caused defendant to lose control of the car and the car to swerve over on the left side of the highway; that he stopped the car as soon as he could. It is undisputed that after the accident the defendant did all that he could promptly to send the injured boy to the hospital; visited the boy at the hospital and showed anxiety and solicitude for his recovery.

As showing the surrounding conditions and as bearing on the quality of defendant's conduct immediately before the accident, we consider the testimony of McDonald, a civil engineer called to testify for the State, as being very significant. Though he did not examine the scene of the accident until September, some six months after the accident, he had prepared a map of the scene which was introduced. He testified that the road was not a highway maintained by the State; there were no markers indicating curves; the point of the accident was on a curve; the paved surface of the road was originally 14 feet wide; that this surface had "ravelled" at the edges and contained many "chugholes." He further testified that at the point, the road was a one-lane highway "where customarily people ride in the center until they meet another car and slow down and pass."

With this testimony of the attendant circumstances and surroundings, supplied by an expert employed by the prosecution, and with the only positive evidence in the record that of the defendant, himself, and his son, that at the time the defendant was guilty of no negligence, whatever, we fail to find any proof that the defendant

was guilty of such negligence as would support a conviction of crime.

The assignments of error on the facts are sustained and the judgment is reversed and the cause dismissed.

All concur.