RAYMOND · LEWIS

*v.*

STATE OF TENNESSEE

(*Knoxville,* September Term, 1956.)

Opinion filed June 7, 1957.

Rehearing Denied July 29, 1957.

DIETZEN, GRAHAM, DIETZEN & BROCK, Chattanooga, for plaintiff.

THOMAS E. FOX, Assistant Attorney General, for the State.

MR. JUSTICE SWEPSTON delivered the opinion of the Court.

The plaintiff in error, hereinafter called the defendant was indicted for murder in the first degree, was convicted of murder in the second degree and sentenced to not more than twenty(20) years in the State prison. He has appealed and assigned errors.

The first assignment of error is that there was no evidence to support a conviction of murder in the second degree because malice was not shown, nor was the firing of the shot shown to have been done intentionally or wilfully.

The second assignment is that since there were no

eye-witnesses to the actual firing of the shot, the evidence is entirely circumstantial and is insufficient to prove murder because such evidence is not inconsistent with the hypothesis that the shot was fired accidently rather than wilfully, so that the verdict is necessarily the result of speculation on the issues of wilfulness and malice aforethought.

The third assignment of error relates to the preponderance of the evidence on the question of wilfulness and malice.

The fourth assignment will be referred to later.

The homicide occurred about 3:00 P.M. on Sunday, November 27, 1955. The defendant, the deceased, whose name was Russell Brown, and two other men, Clyde Pickett and Hoyt Crowe, went in a truck owned by deceased to a sawmill owned and operated by the deceased in the vicinity of Daisy Mountain, near Chattanooga, Tennessee, for the purpose of getting a truck load of lumber purchased by the defendant from the deceased. All four of them indulged in drinking some white whisky but the extent of their drinking is not definitely shown by the record and is not now material in this case.

While the lumber was being loaded the defendant and the deceased had some discussion or perhaps argument with reference to the value of the lumber and the terms of payment for same and defendant did some cursing at the time. The defendant remarked to the deceased that he had just as well owe the deceased as for the deceased to owe him. This remark obviously referred to the fact that the defendant delivered newspapers in the Daisy Mountain area and that deceased owed him a bill for the newspaper deliveries.

Defendant testified that he had been collecting for his newspapers on that Sunday morning and that as his collections were sometimes large he carried a pistol presumably to avoid a hold-up and robbery of himself. In any event he had the pistol with him and while the four of them were at the sawmill site the defendant exhibited a 32 calibre pistol and asked the witness, Clyde Pickett, whether he knew where he could trade it for a larger one. At another time at the mill site he drew this pistol on Hoyt Crowe for no apparent reason and then he placed the gun back in his pocket.

After the truck was loaded with lumber the four of these men left the sawmill together, all riding the cab of the truck. They stopped near a barn about a half mile away from the sawmill where Hoyt Crowe and Clyde Pickett got out of the truck. Crowe went to a barn a short distance from the road to feed a horse, but Pickett stood near the truck but to the rear of the cab. Deceased and defendant remained in the cab of the truck with the deceased under the wheel. Shortly thereafter Pickett heard a shot and looked toward the men in the truck. The two men were sitting in the truck together, defendant had a pistol in hand which Pickett took away from him as the defendant dismounted from the truck. The deceased was not armed and, so far as this witness heard, there had been no further discussion or argument between them. It developed later from the doctor's examination that the bullet had entered the groin or side of the deceased's leg and severed one of the main arteries and he bled to death shortly threafter. After he was shot the defendant held him up in the cab of the truck for a few minutes and then he and Pickett lifted the deceased to the ground where he was lying when death occurred.

When Crowe returned from the barn he asked what was the matter and the defendant said that the deceased had fallen out of the truck. An ambulance was called and later came and removed the body but the defendant had already left the scene beforehand. A witness testified that he came along about ten minutes after the killing and picked up the defendant who was pretty drunk and took him home in his car.

One witness testified he remarked to the deceased that the defendant was getting pretty drunk and the law will get him, to which the deceased replied, "Let him get drunk, I will beat him." An effort was made to interpret this to mean that the deceased had the intention to rob the defendant. However, this testimony does not seem to us to have any causal connection with the material aspects of the case.

In short, we have a situation where the circumstances existing up to a few minutes before the homicide are shown by the evidence, howsoever meagerly, but we have no eye-witnesses to the shooting except the defendant himself, who simply testified that he was so drunk he did not know what happened, and the circumstances that immediately after the shot the witness Pickett saw the gun in the defendant's hand and that the deceased had been shot with this weapon.

Reverting to the first three assignments of error, we will postpone a discussion of the authorities relied on until after we have stated what we believe to be controlling principles which are decisive to this case.

■ In *Coffee v. State*, 11 Tenn. 283, 287, there were three opinions by the respective judges. Green, Judge, made this very clear statement:

"Presumptions only arise where there is an absence of proof. In homicides, when the fact of killing, with its attendant circumstances, is proved clearly and satisfactorily, so that the proof either shows express malice, or that there was no malice at all, there is nothing to be presumed either the one way or the other; but in cases where the killing may be proved, and no accompanying circumstances appear in the evidence, the law presumes that the killing was done maliciously. So where the killing is proved, the circumstances attending it are shown, through no express malice may appear from the proof, it may be presumed from some attending fact, as if a deadly weapon were used, the law presumes malice. So (citing other examples such as extreme cruelty)."

The above language is quoted in *Bryant v. State,* 66 Tenn. 67, and approved.

Then in *Draper v. State,* 63 Tenn. 246, it was stated as follows:

"Every man is presumed to be innocent until his guilt is legally made to appear; but when a homicide is clearly proven, and the slayer ascertained, and nothing else appears, the killing is presumed to be criminal, as every person is presumed to intend the usual and natural consequences of his acts."

In *Epperson v. State,* 73 Tenn. 291, and *Foster v. State,* 74 Tenn. 213, it is said that where a homicide is clearly proved and the slayer is ascertained, malice is presumed, until the contrary appears from either the direct, or the circumstantial evidence, or both, in the case, whether the same be offered by the defendant, or existing in the evidence of the State.

Accordingly, it seems to us that we have a situation here where a homicide is clearly shown and the slayer is identified. The witness Pickett saw the gun in the defendant's hand immediately after the firing of the shot there do not appear any other circumstances immediately surrounding the firing of the pistol. The only eye-witness is the defendant himself who testifies that he was so drunk that he knows nothing about what occurred. The circumstances leading up to within a few minutes of the homicide, if they lend any color at all to the actual homicide, are unfavorable to the defendant and do not indicate that the killing was accidental, wherein this case differs from the facts in *Holder v. State,* 152 Tenn. 390, 277 S.W. 900, and other cases to be referred to hereinafter.

█ Therefore, we think it must be presumed that the killing was done with malice, which supports a verdict of second degree murder and, of course, intentionally.

The cases relied upon by the defendant were all cases wherein the facts and circumstances coexisting with and accompanying the killing are in evidence, so that they fall within another part of the statement of the rule given by Judge Green in *Coffee v. State, supra.* For instance, in *Holder v. State,* 152 Tenn. 390, 277 S.W. 900, the statement of facts is very brief because the case had to be remanded, but the opinion states that the great weight of the proof tends to show that the killing by a pistol was accidental. In the later case of *Taylor v. State,* 157 Tenn. 421, 427, 7 S.W.2d 50, 51, Green, Chief Justice, in referring to the Holder case, says:

"A pistol, being unlawfully carried, fell from the pocket of plaintiff in error and was accidentally discharged."

The question in the Holder case was the correctness of the charge attempting to define involuntary manslaughter but it was omitted to state that the killing has to be the natural and probable result of an unlawful act. The opinion then holds that where the killing was *unintentional*, defendant must have pointed the pistol, unlawfully carried, at deceased, or intentionally shot so as to endanger deceased, or otherwise handled it as. to make the killing of deceased a natural and probable result of such conduct, in order to make him guilty of involuntary manslaughter.

Green, Chief Justice, went on to explain the reason for this to be that where the conduct, that is the unlawful carrying of a pistol, is only *malum prohibitum*, the act though unlawful may have no criminal causal relation to the result and because no criminal intent is necessarily present. Whereas on the other hand, if the act be *malum in se*, as for instance, driving an automobile upon the highways while the driver is intoxicated, the criminal intent is implied.

And so in *Robertson v. State*, 70 Tenn. 239; *Nelson v. State*, 65 Tenn. 418, the facts fully appeared in the evidence which showed clearly that there was no intention to kill or to harm anyone but the handling of the gun was done only in a playful mood, thus eliminating any presumption of criminal intent. The same thing was true in *Garrison v. State*, 163 Tenn. 108, 40 S.W.2d 1009. Therefore, we have no fault to find with the above cases relied upon by the defendant except they are not applicable to the present situation. However, we cannot agree with the rule which the brief deduces from those authorities which is stated to be that malice is implied from the

use of a pistol if, but only if, the weapon was intentionally fired. The definition is too narrow, as is fully illustrated by the statement of facts in the above cases relied upon by the defendant. The true rule is that if the weapon is handled in any manner so as to make the killing a natural or probable result of such conduct, malice will be presumed from the use of the weapon.

The brief of the State states that if the killing had been an accident the rule in *Rogers v. State*, 196 Tenn. 263, at pages 266 and 267, 265 S.W.2d 559 would apply; the crime there charged was second degree murder by reason of an accidental killing by an automobile driven by one who was wilfully intoxicated and knowingly driving an automobile at a dangerous rate of speed on the highways with knowledge that his so doing was perilous to every person on the highway.

We are of opinion that even if the fact had been that this was an accidental homicide, the Rogers case would not be applicable because the misconduct in that case was *mulum in se*. Whereas, carrying a deadly weapon or drinking intoxicating liquor are both *malum prohibitum*, as pointed out, *supra*, with reference to handling or carrying a deadly weapon and as clearly pointed out in *Hurt v. State*, 184 Tenn. 608, 201 S.W.2d 988, with reference to ordinary violation of the speed laws not amounting to gross, culpable, reckless carelessness constituting criminal negligence.

In that opinion Judge Gailor refers to *Holder v. State, supra*. Whether or not the defendant was greatly intoxicated at the time to the extent that he did not know what occurred is immaterial because the jury did not find

him guilty of murder in the first degree but only murder in the second degree. For any offenses below second degree murder an accused is held to the same responsibility as a sober man. *Pirtle v. State,* 28 Tenn. 663, and *Atkins v. State,* 119 Tenn. 458, 489, 105 S.W. 353, 13 L.R.A., N.S., 1031.

For reasons stated, therefore, the first three assignments must be overruled.

The fourth assignment complains of certain remarks made by the Attorney General in his address to the jury but we do not think they were prejudicial. We think that the conviction in this case was had on the evidence.

The judgment below is affirmed.