**STATE of Tennessee, Appellee,**

v.

**Van David PRIDE, Appellant.**

Court of Criminal Appeals of Tennessee, at Jackson.

June 23, 1983.

Opinion on Petition to Rehear Oct. 6, 1983.

Permission to Appeal Denied by Supreme Court Jan. 30, 1984.

Raymond S. Leathers, Asst. Atty. Gen., Nashville, David G. Hayes, Dist. Atty. Gen., Union City, for appellee.

Bruce Conley, Bruce Moss, Damon E. Campbell, Union City, for appellant.

## OPINION

DAUGHTREY, Judge.

The defendant, Van David Pride, was convicted of second degree murder in the shooting death of his brother, Alvin (Alvie Joe) Pride. He was also found guilty of employing a firearm in the offense. At a separate hearing, he was sentenced to 40 years imprisonment, enhanced by a five year sentence for use of a firearm. On appeal, he contends (1) that he was not properly advised of his *Miranda* rights before making a statement that was later introduced against him, (2) that the trial court erred in denying his motion for a judgment of acquittal on the charge of second degree murder, and (3) that his sentence was not imposed in accordance with Tennessee's recently enacted sentencing

statute, T.C.A. §§ 40–35–101 et seq. We find no reversible error in connection with the issues raised on appeal, and we therefore sustain the conviction.

■ The record shows that Pride made two statements to police, one shortly after his arrest and another at the stationhouse. As the state points out, the defendant failed to file a proper pretrial motion to suppress these two statements, in violation of Rule 12(b)(3), Tennessee Rules of Criminal Procedure. For this reason, and in the absence of good cause for the delayed motion, the trial court should have refused to rule on the merits of the question. The judge nevertheless determined that Pride had been adequately warned of his *Miranda* rights before making his first statement to police, that he waived those rights and that this waiver carried over to the second statement which was recorded and then transcribed.

■ The first words spoken on the audiotape of the second statement are those of Pride's interrogator, warning Pride that he has a right to have an attorney present during questioning. Defense counsel now asserts that the failure to advise the defendant further that anything he might say could be used against him was a violation of *Miranda* and that Pride's subsequent statement to police should be suppressed. The record shows, however, that Pride had already been given his *Miranda* warnings before making his initial statement to police, and there is nothing to suggest that the advice of rights on the prior occasion was incomplete. Our law recognizes that an accused need not be given repeated *Miranda* warnings once he has been advised of his rights and has waived them. *Reaves v. State*, 523 S.W.2d 218, 220 (Tenn.Cr.App.1975). We thus find no error in the trial court's decision to overrule the defendant's motion to suppress.

Nor did the trial judge err in declining to grant a judgment of acquittal on the second degree murder charge. The defendant insists that at most his brother's homicide constituted manslaughter, but the proof suggests otherwise. David and Alvie Joe had been "horsing around" in the front yard of their home when the scuffle got out of hand, and the two became angry. No blows were exchanged, but each of the brothers offered to "whip" the other. The defendant, determined "not to let Alvie Joe whip him," went to his bedroom and picked up a semi-automatic .22 rifle which he had placed under his bed. When his brother "came through the door making like 'The Hulk'," the defendant fired a shot at him.

The father of the two men, Jessie Pride, was sleeping in the same bedroom at the time the defendant entered. He tried to wrestle the gun away from his son, and it went off again. David Pride looked at his brother lying at the foot of his father's bed, put down the gun, and walked out of the house. He was subsequently arrested down the street at a neighbor's house.

The victim was still alive when medical personnel and law enforcement officials reached the scene. He later died of a gunshot wound to the abdomen, fired at what the pathologist estimated to be a range of 0–24 inches.

■ To convict of second degree murder, the state must prove that the accused unlawfully and willfully killed another and that the killing was malicious. *Fox v. State*, 1 Tenn.Cr.App. 308, 441 S.W.2d 491, 495–96 (1968). Our law recognizes that if a person, "upon a sudden impulse of passion, without adequate provocation.., kills another willfully and maliciously," the killing constitutes second degree murder. *Bailey v. State*, 479 S.W.2d 829, 834 (Tenn.Cr.App. 1972). Moreover, the element of malice may be sufficiently shown by the use of a deadly weapon. *State v. Gilbert*, 612 S.W.2d 188, 190 (Tenn.Cr.App.1980).

■ It is abundantly clear that the jury in this case found inadequate provocation for the defendant's act of arming himself and shooting his brother. In this respect, the defendant's statements to police were sufficient to establish the elements of the offense. Indeed, the degree of his malice and willfulness can be seen by the fact that his father tried but was unable to prevent

him from firing the rifle a second time. The record also shows that the defendant left the house without making any effort to assist his brother, who was still alive at the time. Under these circumstances, we are unable to say that the trial court erred in letting the case go to the jury on the theory of second degree murder.

At the sentencing hearing, the state proved that the defendant had been convicted in a case that occurred in 1979 and involved the infliction of a life-threatening gunshot wound to one Patrick Delarosa; also wounded at the same time, but less seriously, was a second man, Marvin Wilson. The defendant pleaded guilty to reduced charges of attempt to commit first degree murder and attempt to commit aggravated assault, and to a weapons charge. The state argued that these prior offenses, occurring within five years of the current conviction, qualified Pride as a persistent offender under T.C.A. § 40–35–106. The prosecution further argued that Pride was an aggravated offender under T.C.A. § 40–35–107 because both the current offense and the prior offenses involved bodily injury to the victims.

The trial court agreed, finding that Pride was both a persistent and an aggravated offender. The judge therefore imposed a Range II sentence, as required by § 40–35–109(c).

■ The defendant now argues that under § 40–35–106(b)(1), the persistent offender label is inapplicable if the prior felonies were "committed as part of a single course of conduct within a period of twenty-four (24) hours during which there was no substantial change in the nature of the criminal objective," which is obviously the case here. However, as the state further points out, the exception in (b)(1) is inoperative if the prior offenses resulted in "bodily

harm to more than one person," which is also the case here.* We thus conclude that the defendant qualifies as a persistent offender for sentencing purposes and that a Range II sentence was properly imposed on him, pursuant to the provisions of § 40–35–109(c).

This being the case, it is unnecessary to determine whether or not Pride was properly found to be an aggravated offender as well, and we pretermit that question.

The judgment of the trial court is affirmed.

BYERS and CORNELIUS, JJ., concur.

## OPINION ON PETITION TO REHEAR

DAUGHTREY, Judge.

Defense counsel has filed a petition to rehear, specifying two principal issues which he contends this court either overlooked or decided incorrectly in its original opinion. The first question involves the admissibility of defendant Pride's confession, an issue which was adequately discussed and resolved in the original opinion and needs no reiteration here. Rule 39(a), Tennessee Rules of Appellate Procedure. The other issue, however, concerns the correctness of the sentence imposed by the trial court and raises a question which was pretermitted in our first opinion, to the defendant's detriment. We therefore grant the petition to rehear, limited to a reconsideration of the sentence.

Under Tennessee's new sentencing act, the steps to be taken in determining the appropriate sentence are set out in T.C.A. § 40–35–210. The trial judge must first decide the appropriate range of sentence, that is, whether the defendant is subject to a Range I (lower range)[1] or a Range II (upper range)[2] sentence. This determina-

---

* "Bodily harm" is not defined by § 40–35–106, but in § 40–35–107 the essentially similar term "bodily injury" is defined to include "a cut, abrasion, bruise, burn, or disfigurement, physical pain; illness or impairment of the function of a bodily member, organ or mental facility." Thus, the fact that Marvin Wilson was struck by pellets from the shotgun blast, even though his

wounds may not have been serious, would be sufficient to satisfy the "exception to the exception" of § 40–35–106(b)(1).

1. See T.C.A. § 40–35–109(a).

2. See T.C.A. § 40–35–109(b).

tion depends on whether the defendant is found to be an "especially mitigated offender,"[3] a "standard offender,"[4] a "persistent offender,"[5] or an "aggravated offender."[6] The first two categories fall within Range I; the second two within Range II.

Once the proper range has been determined (a span of time which could amount to 25 years or more[7]), the judge must then calculate a specific determinate sentence within that range.[8] In deciding whether the sentence should fall within the lower end or the upper end of the range, the judge must consider certain statutorily enumerated mitigating[9] and enhancing factors.[10]

To avoid problems of double jeopardy, the statute provides that when determining the range of sentence, the court cannot find the defendant to be an aggravated (or Range II) offender by using factors which are essential elements of the offense.[11] Moreover, when determining the specific sentence to be imposed within either Range I or Range II, the court cannot rely on enhancement factors which are essential elements of the offense or which have already been used to establish the offense as an aggravated (Range II) offense.[12]

The trial court in this case found Pride to be both a persistent and an aggravated offender and therefore concluded that he was subject to a Range II sentence for second degree murder, which would be a range of 35 to 60 years.[13] After reviewing the presentence report and hearing testimony from several witnesses, the trial judge imposed a 40 year sentence for second degree murder, to be enhanced by a five year sentence for employment of a firearm.[14]

■ In our initial review of the sentencing procedure, we found sufficient evidence to support the legal conclusion that Pride was a persistent offender and thus subject to a Range II sentence. We therefore declined to decide whether the trial court erred in holding that he was also an aggravated offender, noting in effect that such a determination would be superfluous to a decision on the Range II issue. In this conclusion, we were technically correct. But what we overlooked in pretermitting the aggravated offense question is that the trial court's finding of aggravation, which we left undisturbed, adversely affected the defendant's release eligibility date.

Under T.C.A. § 40–35–501, a mitigated offender must serve 20% of the sentence imposed, a standard offender 30%, and a persistent or aggravated offender 40%, before becoming eligible for release. But a defendant found to be *both* persistent *and* aggravated must serve at least 50% of the sentence imposed. T.C.A. § 40–35–501(e). Thus, the question of whether Pride is an aggravated as well as a persistent offender is one which should have been addressed, because it may make a substantial difference in the amount of time he will actually serve before release.

**3.** *See* T.C.A. § 40–35–108.

**4.** *See* T.C.A. § 40–35–105.

**5.** *See* T.C.A. § 40–35–106.

**6.** *See* T.C.A. § 40–35–107.

**7.** The penalty for second degree murder, for example, is 10 years to life, which is calculated at 60 years for purposes of range determination. T.C.A. § 40–35–109(d)(1). Half the difference between these two limits, or the range, is 25 years. The range would be even greater if a sentence of a number of years greater than 60 were imposed, and by its terms § 40–35–109 does not prohibit such a sentence.

**8.** Under T.C.A. § 40–35–211 all affected sentences are determinate rather than indeterminate, as many were under prior law.

**9.** *See* T.C.A. § 40–35–110.

**10.** *See* T.C.A. § 40–35–111.

**11.** *See* T.C.A. § 40–35–107(6).

**12.** *See* T.C.A. § 40–35–111.

**13.** *See* n. 7, *supra,* for method of calculation. Half the 25 year range added to the minimum of 10 years equals 35 years.

**14.** This enhancement provision is contained in T.C.A. § 39–6–1710; *see also State v. Hudson,* 562 S.W.2d 416 (Tenn.1978).

■ The trial court found that Pride had committed an "especially aggravated offense" under T.C.A. § 40–35–107(1) because the "crime [he committed] resulted in death (to his brother) and he has previous conviction of a felony resulting in bodily injury to another person." But to hold that one convicted of second degree murder, which necessarily involves a homicide, can also be an aggravated offender apparently violates T.C.A. § 40–35–107(6)(B). That subsection provides that the defendant cannot be sentenced as an aggravated offender "[i]f *any* of the circumstances which would make the commission of the offense an especially aggravated [one] ... are circumstances which are essential elements of the crime charged in the indictment (emphasis added)."[15] Here the fact of the victim's death, an essential element of second degree murder, was also one of the circumstances found by the trial judge to bring the defendant within the operation of § 40–35–107(1). Given the plain language of the statute, the determination of aggravation was apparently statutorily improper.

The trial judge recognized the potential conflict between the obvious legislative intent inherent in the aggravated offense statute and the specific exemption in subsection (6)(B). The problem can best be understood in terms of a hypothetical: A defendant convicted of second degree murder who has previously been convicted of the same offense would appear to be exactly the type of offender whom the legislature meant to subject to a Range II penalty. If the first homicide were his only prior offense, however, he would not qualify as a persistent offender. Yet he could not be subjected to a Range II sentence as an aggravated offender because, as noted above, one of the essential elements of the current offense would also be one of the circumstances supporting aggravation, and a finding of aggravation would thus be prohibited by subsection (6)(B). The result in the hypothetical, a "double murderer" who nevertheless is not subject to Range II punishment for the second homicide,[16] seems inconsistent with the general legislative purpose of the act, but the result also appears to be inescapable, given the plain language of subsection (6)(B).[17] We conclude that there is a gap in the statute, but in the absence of an ambiguity in the language, we do not think we are free to fill it in. We have therefore determined to adhere to the clear language of the statute and leave it to the legislature to make any necessary changes in that statute.

It follows that the defendant in this case cannot be held to be an aggravated offender under § 40–35–107(1). Because we find no other factors which would make the defendant an aggravated offender, we conclude that the trial court's judgment should be modified to reflect that Pride is a persistent *but not* an aggravated offender. This modification will automatically change his release eligibility date by reducing his mandatory service period from 50% to 40% of his sentence.

■ Finally, with regard to the sentence determination, the defendant alleges that certain enhancing factors were improperly considered by the trial court. As explained above, the enhancement factors set out in T.C.A. § 40–35–111 are relevant only to a determination of the specific sentence to be imposed and not to the range of sentence or to the release eligibility date. The only sentencing issues raised in the motion for a new trial concerned the propriety of the persistent and aggravated offender designations. Both of these questions relate to range and eligibility determinations and not to a calculation of the specific sentence. Because the latter question was not included in the motion for a new trial, we conclude that the propriety of

---

**15.** This provision has been amended since the trial in this case, but the amendment does not affect the issue here.

**16.** The second murder might qualify as an aggravated offense, however, if committed while the defendant was on bail, parole or other release program, or incarcerated on the first felony conviction. *See* §§ 40–35–107(3) and (4).

**17.** *See* n. 15, *supra.*

the enhancing factors enumerated by the trial court has been waived on appeal.

Moreover, this question was not raised as a separate issue in the defendant's brief on appeal and is not properly before the court on petition to rehear. We nevertheless point out that the sentence actually imposed was in the lower end of the proper range, being only five years above the lowest available minimum of 35 years and 15 years lower than the highest available maximum, figuring 60 years as the statutory equivalent of a life sentence as required by T.C.A. § 40–35–109(d)(1). The court found no mitigating circumstances, and it thus appears that any error relating to the individual enhancing factors must be considered harmless.

For the reasons set out above, we adhere to our original judgment affirming the defendant's conviction of second degree murder and of employment of a firearm and the resulting sentence of 45 years. We hold, however, that the trial court's judgment must be modified to reflect that the defendant is a persistent but not an aggravated offender.

BYERS and CORNELIUS, JJ., concur.