**John W. SLATE, Sr., Petitioner–Appellant,**

v.

**Howard CARLTON, Warden, Respondent–Appellee.**

**No. 00–6392.**

United States Court of Appeals, Sixth Circuit.

Aug. 7, 2002.

Before KRUPANSKY and COLE, Circuit Judges; and DUGGAN,* District Judge.

DUGGAN, District Judge.

Petitioner, John W. Slate, Sr. ("Slate"), filed a *pro se* petition for habeas corpus pursuant to 28 U.S.C. § 2254 on September 28, 1999. Slate raised sixteen issues in his petition. The district court addressed only one issue on the merits, and held it did not have jurisdiction over the remaining issues either because Slate had procedurally defaulted them or the issues did not involve federal constitutional matters. This Court granted Slate a certificate of appealability ("COA") on two issues: 1) whether the district court should have dismissed the petition for failure to exhaust state remedies; and 2) whether Slate's second degree murder conviction is supported by constitutionally adequate evidence. For the reasons set forth below, the district court's decision is AFFIRMED.

## I. Background

Slate was convicted in Tennessee of first degree murder, attempt to escape while confined for the commission of a felony, and possession of a firearm while confined as an inmate. Slate's convictions and sentences were affirmed on direct appeal. Slate then filed for post-conviction relief in state court, which was denied by the trial court. The Tennessee Court of Criminal Appeals reversed the trial court with respect to the first degree murder conviction. The appeals court found that the

---

* The Honorable Patrick J. Duggan, Senior United States District Judge for the Eastern District of Michigan, sitting by designation.

evidence supported a second degree murder conviction rather than a first degree murder conviction. The case was remanded to the trial court for an appropriate sentence. The trial court's sentence was later modified by the appeals court to 24 years.

Petitioner filed his *pro se* petition for habeas corpus pursuant to 28 U.S.C. § 2254 on September 28, 1999. In his petition, Slate asserted the following issues:

6. The evidence was not sufficient to support a conviction for second degree murder.

7. He received ineffective assistance of counsel at trial.

8. The jury instruction on premeditation was unconstitutional.

9. He was subjected to an unconstitutional search and seizure.

10. The trial court did not submit the jury instructions in writing to the jury.

11. The trial court's failure to sever the attempted escape and firearm charges from the murder charge violated Slate's rights to due process.

12. Misconduct on the part of the prosecutor during closing arguments.

13. The separation of one juror from the remaining jurors after the jury was sequestered.

14. The trial court erred in denying a continuance so Slate could locate missing witnesses.

15. His sentence was improperly enhanced.

16. The trial court erred in refusing to expunge the first degree murder conviction.

17. The sentencing judge did not read the trial transcript.

18. The sentencing judge refused to allow Slate to represent himself.

19. The prosecutor should have been removed from the case because of a conflict.

20. He received ineffective assistance of counsel at sentencing.

21. The trial court erred in not dismissing the attempted escape and firearm charges.

(J.A. at 76–77).

The district court ruled that Slate had procedurally defaulted claims 2, 3, 4, 5, 7, 9, 13, 14, 15, and 16. Therefore, the district court did not address these claims, for lack of jurisdiction. The district court held that Slate's claims 6, 8, 10, 11, and 12 did not involve federal constitutional matters. Therefore, the court lacked jurisdiction over those claims as well. The district court did, however, address Claim 1, Slate's sufficiency of the evidence claim.

## II. Standard

This Court reviews a district court's decision to deny a writ of habeas corpus *de novo*, but reviews the district court's factual findings only for clear error. *Barker v. Yukins*, 199 F.3d 867, 870 (6th Cir.1999). The Anti–Terrorism and Effective Death Penalty Act of 1996 provides that a writ of habeas corpus may only be granted where the state court proceedings:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1) and (2).

## III. Analysis

This Court granted Slate a COA on the following two issues:

(1) whether Slate's petition should have been dismissed without prejudice for failure to exhaust state remedies *see Rose v. Lundy,* 455 U.S. 509, 518–520, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982); and if not,

(2) whether Slate's second degree murder conviction is supported by constitutionally adequate evidence.

(5/15/01 Order).

## I. *Exhaustion:*

Slate and Respondent agree that the exhaustion requirement has been met. Therefore, the exhaustion issue is moot. Slate has also put forth arguments regarding procedural default. The issue of procedural default, however, is not before this Court. This Court's review is limited to the issues upon which the Court granted Slate a COA. *See* 28 U.S.C. § 2253(c); *Seymour v. Walker,* 224 F.3d 542, 561 (6th Cir.2000).

## II. *Sufficiency of the Evidence:*

In reviewing a claim that there is insufficient evidence in the trial record for a conviction, this Court must ask "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. This familiar standard [views evidence] in the light most favorable to the prosecution[, and] thus impinges upon jury discretion only to the extent necessary to guarantee the fundamental protection of due process of law." *Scott v. Mitchell,* 209 F.3d 854, 885 (6th Cir.2000)(quoting *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979))(internal quotations omitted).

The district court adopted the Tennessee Court of Criminal Appeals' summary of the evidence against Slate.

The petitioner was prosecuted for killing David Jackson at the petitioner's home and for his subsequent possession of a weapon and escape attempt while in jail awaiting trial. William Bailey was tried with the petitioner as an accessory after the fact of murder, although he changed his plea to guilty after testifying for the petitioner.

From the state's perspective, the primary witness to the events was Glenda Hampton. She testified that the victim was acquainted with her brother and that she first met him on the day of the shooting. She said that she went with him to the petitioner's home on the evening of January 30, 1988. The petitioner met them at the gate to the property and he and the victim hugged. They went into the house and she talked with the petitioner's wife, Thelma Slate, in the living room while the two men went to the kitchen.

Hampton testified that she heard talking in the kitchen. At the victim's request, they all gathered in the kitchen. Hampton stated that the petitioner, his wife, William Bailey and the victim were present. She also said that two of the petitioner's sons came in for a few minutes. She said that the adults sat at the kitchen table talking and drinking, the petitioner and his wife drinking wine and the others, including herself, drinking beer. She said that Bailey was drunk. She stated that Bailey pulled up her sweater and she asked him not to do it. He did it a second time and the victim and he got into an argument. She said that while they were arguing, Bailey stood up and the petitioner "smacked him in the face."

Hampton testified that the victim and the petitioner began arguing back and forth and that the petitioner said that the victim did not respect the petitioner's wife, home and family. She said

that the two were standing up, pointing fingers at each other and yelling. She said that she asked the victim at about 9:25 p.m. if he was ready to go because she did not like the arguing. She said that he replied that they would leave in about fifteen minutes. She testified that about 9:45 the victim decided to leave. She stated that "they were still arguing" and that she was getting a little scared when the victim asked her if she was ready to go.

Hampton testified that she and the victim got up to leave and that she walked to the front door with the victim behind her. As she reached for the knob, she heard a noise and immediately turned around. She stated that she saw the victim, with a hole in his head, falling to the floor. She said that the victim only had a beer can in his hand. The petitioner was standing at the kitchen door with a gun in his hand. Although she indicated that she did not see where Bailey had been at the exact time of the shot, she stated that he was standing near her and not near the petitioner. She said that she yelled and she admitted that she became hysterical. She said that the petitioner did not say a word. Mrs. Slate talked Hampton into hiding in a closet in the sons' bedroom where, according to Hampton, they were sleeping. Hampton stated that she fell asleep, but later awoke and came out when the police were present.

When the police investigated, responding to a call received about 10:05 p.m., they talked to Mrs. Slate. The petitioner and Bailey were not there. Mrs. Slate referred to an unknown man doing the shooting. Several hours into the investigation, Hampton walked out of a bedroom. The police found no weapons. The victim had been shot in the center of the forehead and he died about a week later.

In March, 1988, the petitioner, his family and Bailey were found in La-Crosse, Wisconsin, using assumed names with supporting identification. The petitioner was returned to Sevier County. In May, 1988, a search of the petitioner's jail cell uncovered a loaded handgun, two hacksaw blades and a letter written by him to his family which indicated an escape plan. Saw marks were found on the cell bars.

The defense evidence related to an accidental shooting with self-defense undertones. The petitioner and Bailey testified. Both related a history of ill will by the victim for Bailey. The petitioner testified that the victim and Hampton came to his house in drunken conditions. He said that there were twenty or thirty empty beer cans in the victim's car and that the victim carried a six-pack into the house. He said that the victim yelled at Bailey and that an argument began. At one point, the victim began smoking a marijuana cigarette. The petitioner said that he got upset with the victim's smoking and arguing and that he told the victim to leave.

The petitioner testified that Hampton walked into the living room, followed by the victim. Bailey got up from the kitchen table. The petitioner said that he saw a small gun in the victim's hand and saw Bailey pull a gun out of a pocket. The petitioner said that he yelled for no guns, grabbed Bailey's gun and it discharged. The bullet hit the victim. The petitioner said that Hampton became hysterical and that he was in shock, dropping Bailey's gun. He said that Bailey picked up both guns. The petitioner said that he did not know what to do, but after leaving to call for an ambulance, he and Bailey left. He acknowledged that he was scared and tried to avoid being arrested. He met

with his family in Kansas and was with them and Bailey in Wisconsin when he was arrested. He admitted having a gun in the Sevier County Jail and planning to escape. He denied intending to shoot the victim.

Bailey's testimony essentially corroborated the petitioner's. He said that he had had problems with the victim for three to four years and that every time the victim got drunk, he would argue or fight with Bailey. He testified that both Hampton and the victim goaded him and an argument began. Bailey said that he had a .22 pistol in his pocket, but said that he had just bought it and thought that there was no clip in it. He said he saw the victim "going for something" and that he pulled out his gun. He said he knew the children had seen the victim with a pistol and he wasn't about to take any chances. He stated that the petitioner grabbed his gun and that the shooting was an accident. He acknowledged picking both guns up and taking them with him.

On rebuttal, Sevier County Sgt. Preston Romines testified that he searched the victim's car on the night of the shooting and found one beer can, not twenty or thirty cans. He said no spent cartridges or guns were found in the petitioner's house or the victim's car. Investigator John Schmidt, from the La-Crosse County Sheriff's Department in Wisconsin, testified that the petitioner told him that he, the petitioner, threw away the gun which had been used in the incident. Schmidt stated that the petitioner said that the victim had the gun and that when the petitioner grabbed it, it went off. He stated that the petitioner did not say anything about grabbing a gun from Bailey. (J.A. 84–87).

First, Slate argues that "[a]pplying the common definition of 'willful', Tennessee offered no evidence that Slate 'deliberately or intentionally' killed Jackson." (Appellant's Br. at 28). Slate resorts to The American Heritage College Dictionary for its definition of willful. There is no indication that this is the accepted definition of willful in Tennessee for the term as it is used for second degree murder.

■ In Tennessee,

[t]o convict of second degree murder, the state must prove that the accused unlawfully and willfully killed another and that the killing was malicious. Our law recognized that if a person, "upon a sudden impulse of passion, without adequate provocation .., kills another willfully and maliciously," the killing constitutes second degree murder. Moreover, the element of malice may be sufficiently shown by the use of a deadly weapon.

*State v. Pride*, 667 S.W.2d 102, 104 (Tenn. Crim.App.1983) (citations omitted). The evidence, as stated above, looked upon in the light most favorable to the prosecution, does show that Slate upon a sudden impulse of passion, from the argument he had with the victim, and without adequate provocation, as Hampton testified the victim did not have a weapon, killed Jackson, the victim in this case. Therefore, there is adequate evidence on the record for the second degree murder conviction. Slate's evidentiary arguments are based upon looking at the evidence in the light most favorable to the defense, which this Court cannot do in the context of this appeal. Looking at the evidence in the light most favorable to the prosecution, a reasonable trier of fact can conclude, through circumstantial evidence, that Slate willfully shot the victim. Therefore, Slate's arguments fail.

■ Second, Slate argues that there is no evidence of malice in this case. As stated above, however, "malice may be suf-

ficiently shown by the use of a deadly weapon." *Id.* The killing in this case occurred with the use of a deadly weapon, *i.e.,* the gun.

Slate argues that although malice may be inferred from the use of a deadly weapon, "[t]he true rule is if the weapon is handled in any manner [so] as to make the killing a natural or probable result of such conduct." (Appellant's Br. at 33 citing *Lewis v. State,* 202 Tenn. 328, 304 S.W.2d 322, 336 (Tenn.1957)). Slate goes on to argue, using Bailey and Slate's testimony at trial, that there is insufficient evidence on the record for malice to be inferred from the use of a deadly weapon in this case.

*Lewis,* the Supreme Court of Tennessee case cited by Slate for the "true rule" in inferring malice from the use of a deadly weapon, is on point. In *Lewis,* the defendant and the victim had argued before the shooting. During the shooting, the defendant and the victim were sitting inside a truck while the other witnesses were outside. Just after the shooting, one of the witnesses saw the defendant holding the gun. Defendant fled the scene before the ambulance arrived. The facts of the two cases are very similar, and the Supreme Court of Tennessee found the evidence in *Lewis* to be sufficient for a second degree murder conviction.

As the Court of Criminal Appeals stated in Slate's case:

> Preliminarily, we note that the defense evidence, if believed, would show that the killing was, from the petitioner's perspective, accidental and even involved a healthy dose of justification in the context of self-defense or defense of another. *Obviously, the jury's verdict reflects that it completely discredited the testimony by the petitioner and Bailey relating to how the killing occurred.*

(J.A. at 125)(emphasis added). Similar to *Lewis,* there is enough circumstantial evidence in this case to infer that Slate shot the victim with malice.

### IV.  Conclusion

There is sufficient evidence on the record to support Slate's conviction for second degree murder. Therefore, the district court's denial of Slate's petition is AFFIRMED.