IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

AT NASHVILLE

OCTOBER 1997 SESSION



**FILED**

**February 23, 1998**

**Cecil W. Crowson**
**Appellate Court Clerk**

| | | |
|---|---|---|
| STATE OF TENNESSEE, | ) | |
| | ) | |
| APPELLEE, | ) | |
| | ) | No. 01-C-01-9609-CC-00393 |
| | ) | |
| | ) | Lincoln County |
| v. | ) | |
| | ) | W. Charles Lee, Judge |
| | ) | |
| | ) | (Vehicular Homicide and |
| | ) | Aggravated Assault) |
| TIMOTHY DEAN MARTIN, | ) | |
| | ) | |
| APPELLANT. | ) | |

FOR THE APPELLANT:

Andrew J. Dearing, III
Attorney at Law
117 South Main Street
Shelbyville, TN 37160

FOR THE APPELLEE:

John Knox Walkup
Attorney General & Reporter
425 Fifth Avenue, North
Nashville, TN 37243

Clinton J. Morgan
Counsel for the State
425 Fifth Avenue, North
Nashville, TN 37243

W. Michael McCown
District Attorney General
215 East College Street
Fayetteville, TN 37334

Weakley E. Barnard
Assistant District Attorney General
Marshall County Courthouse, Room 407
Lewisburg, TN 37091

OPINION FILED:_____

AFFIRMED

Joe B. Jones, Presiding Judge

# O P I N I O N

The appellant, Timothy Dean Martin (defendant), was convicted of vehicular homicide, a Class C felony, and aggravated assault, also a Class C felony, by a jury of his peers. The trial court found the defendant was a standard offender and imposed the following Range I sentences: (a) for vehicular homicide, a $5,000 fine and confinement for four (4) years and eight (8) months in the Department of Correction, and (b) for aggravated assault, a $5,000 fine and confinement for three (3) years and four (4) months in the Department of Correction. The sentences are to be served concurrently for an effective sentence of confinement for four (4) years and eight (8) months in the Department of Correction and fines totaling $10,000. Five issues are presented for review. The defendant contends (a) the evidence is insufficient, as a matter of law, to support his convictions; (b) the State of Tennessee (state) acted in bad faith thereby denying him a fair trial; (c) the trial court erred in allowing an expert to offer an opinion based upon data gathered by another individual; (d) the trial court erred by refusing to charge the jury on the failure of one of the victims to wear a seat belt; and (e) the sentences imposed by the trial court are excessive. After a thorough review of the record, the briefs submitted by the parties, and the law governing the issues presented for review, it is the opinion of this court that the judgment of the trial court should be affirmed.

On the morning of November 6, 1994, the defendant entertained four friends at his Flintville residence. The five men shot pool and drank beer. At approximately 1:00 p.m. the five men left the defendant's residence en route to the residence of the defendant's father. They drove south on Brighton Road. Tony Rogers rode with the defendant in the defendant's pickup truck. The remaining three men followed the defendant in a maroon pickup truck.

Rogers testified "[a]s soon as I shut the door he [the defendant] dropped the clutch and we slid out in the grass and slid sideways in the driveway and slid out into the gravel road. He never let off, just kept going." The defendant was driving at a high rate of speed. Rogers became alarmed and asked the defendant to reduce his speed on more than one occasion. Rogers held onto the door. He did not think the maroon pickup truck could

2

keep pace with the defendant's truck because it was traveling at such a high rate of speed.

When the defendant reached Halcomb Curve, a short distance from the defendant's residence, the defendant's pickup truck "slid from [the] right side [of the road] to [the] left side [of the road]." Rogers looked into the passenger side mirror to determine the location of the maroon truck. When he looked ahead, the defendant's truck collided with an automobile traveling north on Brighton Road on Bynum Curve.

Daniel Vaughn and his mother, Glenda Vaughn, were traveling northbound on Brighton Road. Daniel Vaughn, who was driving, had traveled the road on numerous occasions. When he approached Bynum Curve, Vaughn slowed the speed of the vehicle to 15 to 20 miles per hour as he entered the curve. He heard tires squealing on the other side of the curve. When he looked toward the sound, he saw the defendant's pickup truck sliding around the curve. The defendant's truck was sliding into the northbound lane. Vaughn pulled the automobile he was driving to the far right side of the northbound lane in an effort to avoid the defendant's truck. The pickup truck struck Vaughn's automobile on the far right-hand side of the northbound lane.

A witness visiting a residence located on Brighton Road close to the Halcomb and Bynum curves heard the "screeching" of tires. He also heard the revving of an engine. He then saw a white pickup truck followed by a maroon pickup truck. Both vehicles were traveling at an "excessive" rate of speed. While the witness could not estimate the speed of the trucks, he knew the trucks would "never make the Halcomb curve" at the speed they were traveling.

Those attending the injured at the situs of the collision smelled an odor of an intoxicant emitting from the defendant's breath. The defendant stated he drank two beers. A beer can was found in the defendant's truck, and several opened and unopened beer cans were found in a creek approximately forty yards from the situs of the collision. The defendant told the investigating officer: "I looked down. When I looked up I was on the wrong side of the roadway. It was my fault." He also told a Tennessee Highway Patrol officer he had just purchased the beer. A test to determine the alcohol content of the defendant's blood revealed an alcohol level of .04%. Other tests revealed a trace of cocaine as well as metabolite of cocaine, the compound which forms when cocaine is

3

broken down in the body. Also found was the compound of cocaethylene which is a compound created when cocaine and alcohol are present in the body at the same time. The amounts of these compounds were not quantified because of the small amount found -- less than .1 microgram per milliliter of blood. There was no indication as to how long the cocaine had been in the defendant's system prior to the accident.

Tennessee Highway Patrol Trooper Karen Russell investigated the accident. Trooper Russell stated the speed limit was 55 miles per hour on Brighton Road. It was a clear day and the pavement was dry. The trooper took photographs of the situs of the collision and also took measurements. This information was forwarded to THP Sergeant Harry Smith, an accident reconstructionist with the Department of Safety.

Sergeant Smith reviewed Trooper Russell's measurements and the photographs. He visited the scene of the collision with Trooper Russell. Sergeant Smith testified the physical facts revealed the defendant was across the center of the road prior to the time he began sliding. In other words, the defendant was on the wrong side of the road. The impact occurred near the shoulder of the road on the northbound side, the direction the Vaughns were traveling.

Rogers was rendered unconscious due to the collision. He sustained a fractured pelvis, a broken nose, broken teeth, and injuries to his chin and arm. He spent several days in a hospital.

Glenda Vaughn suffered massive head injuries caused by her head striking the windshield. She died at the situs of the collision. Daniel Vaughn sustained two broken jaws as a result of striking the steering wheel. Daniel Vaughn said he was not wearing a seat belt. He did not know if his mother was wearing a seat belt.

Dr. Tom Norman, the Lincoln County Medical Examiner, testified alcohol acts as a sedative and diminishes cognitive function. Cocaine acts as a stimulant, but it also causes a reduction in cognitive functioning. Using the two substances together would diminish one's ability to make judgments.

The defendant did not testify in support of his defense. However, he presented several witnesses. One witness testified the muffler on the defendant's truck had been modified to make it sound louder and make it "echo." As a result, the truck sounded as if

4

it was traveling faster than it was. This witness, who was riding in the maroon truck, said they had to travel fast to catch the defendant's truck. According to the witness, the defendant was driving fast in the curves.

The defendant's sister-in-law testified Trooper Russell told her both vehicles were hogging the center lane. The defendant's wife testified Trooper Russell told her: "Like I told Daniel [Vaughn] things are going to be said. There is going to be rumors, but this was an accident. Accidents happen." Another witness testified in rebuttal to Rogers's testimony. The witness stated the defendant's tires were not spinning when he left his residence. According to this witness, the defendant was driving at a safe speed and was driving normally.

## I.

The defendant contends the evidence contained in the record is insufficient, as a matter of law, to support a finding by a rational trier of fact that he was guilty of vehicular homicide and aggravated assault beyond a reasonable doubt. He argues the record is devoid of evidence he was driving recklessly when the collision occurred.

## A.

When an accused challenges the sufficiency of the convicting evidence, this court must review the record to determine if the evidence adduced at trial is sufficient "to support the finding by the trier of fact of guilt beyond a reasonable doubt." Tenn. R. App. P. 13(e). This rule is applicable to findings of guilt based upon direct evidence, circumstantial evidence, or a combination of direct and circumstantial evidence. State v. Dykes, 803 S.W.2d 250, 253 (Tenn. Crim. App.), per. app. denied (Tenn. 1990).

In determining the sufficiency of the convicting evidence, this court does not reweigh or reevaluate the evidence. State v. Matthews, 805 S.W.2d 776, 779 (Tenn. Crim. App.), per. app. denied (Tenn. 1990). Nor may this court substitute its inferences for those drawn by the trier of fact from circumstantial evidence. Liakas v. State, 199 Tenn. 298, 305, 286 S.W.2d 856, 859, cert. denied, 352 U.S. 845, 77 S.Ct. 39, 1 L.Ed.2d 49 (1956). To the

5

contrary, this court is required to afford the State of Tennessee the strongest legitimate view of the evidence contained in the record as well as all reasonable and legitimate inferences which may be drawn from the evidence. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978).

Questions concerning the credibility of the witnesses, the weight and value to be given the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact, not this court. Cabbage, 571 S.W.2d at 835. In State v. Grace, 493 S.W.2d 474, 476 (Tenn. 1973), our supreme court said: "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State."

Since a verdict of guilt removes the presumption of innocence and replaces it with a presumption of guilt, the accused, as the appellant, has the burden in this court of illustrating why the evidence is insufficient to support the verdicts returned by the trier of fact. State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). This court will not disturb a verdict of guilt due to the sufficiency of the evidence unless the facts contained in the record are insufficient, as a matter of law, for a rational trier of fact to find that the accused is guilty beyond a reasonable doubt. Tuggle, 639 S.W.2d at 914.

**B.**

Before an accused can be convicted of vehicular homicide, the state is required to prove beyond a reasonable doubt that:

> (a) the accused was operating an automobile, airplane, motorboat, or other motor vehicle;
> (b) the accused was operating the motor vehicle recklessly under circumstances that manifested extreme indifference to the value of human life; and
> (c) a person was killed as a result of the manner in which the accused operated the motor vehicle.

Tenn. Code Ann. § 39-13-213 (1991).

Before an accused can be convicted of aggravated assault as a result of the operation of a motor vehicle, the state is required to prove beyond a reasonable doubt:

> (a) the accused was operating a motor vehicle;
> (b) the accused operated the motor vehicle recklessly

6

> under circumstances manifesting extreme indifference to the value of human life; and
>
> (c) a person sustained serious bodily injury as a result of the manner in which the accused operated the motor vehicle.

Tenn. Code Ann. §§ 39-13-101(a)(1), 39-13-102(a)(2) (Supp.).

The evidence contained in the record, and the reasonable inferences which may be drawn from the evidence, establishes the elements of both offenses. The record reflects the defendant had been drinking at his home with friends. He left his home in his truck, spinning his tires in the grass and driving fast. His passenger was so unnerved by the speed he asked the defendant to slow down on more than one occasion.

The maroon truck, which was following the defendant, could not keep up with the defendant's truck. A passenger in the second truck estimated the second truck was traveling about 45 to 50 miles per hour; a reasonable inference could be drawn that the defendant was traveling much faster. A man visiting a home on Brighton Road heard a truck speeding. He was familiar with the curve. He commented to another person that the truck would "not make the Halcomb curve."

The defendant admitted to the trooper he was on the wrong side of the road when the accident occurred. The THP accident reconstructionist made a consistent finding. Alcohol and drugs were found in the defendant's body.

As a result of the collision, Glenda Vaughn was killed instantly. Daniel Vaughn suffered broken jaws. Both victims suffered serious bodily injury. Tenn. Code Ann. § 39-11-106(33).

The evidence contained in the record is more than sufficient to support a finding by a rational trier of fact that the defendant was guilty of vehicular homicide and aggravated assault beyond a reasonable doubt. Tenn. R. App. P. 13(e); Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

## II.

Originally, the defendant was charged with vehicular homicide and vehicular assault, both requiring proof of intoxication. Those charges were dropped by the state at the close

of the state's proof.  The defendant contends that the state acted in bad faith by "ambushing" him with expert testimony regarding the presence of alcohol and cocaine in his system and then dropping the charges requiring proof of intoxicants.

At the close of the state's case, the trial court advised the state it had not proven beyond a reasonable doubt the offenses which were predicated upon the defendant driving while under the influence.  The court stated if the defendant was convicted of any such count, the court would likely set aside the conviction post-trial.  The state dismissed the counts of the indictment predicated upon the defendant driving while under the influence and proceeded with the counts of the indictment alleging the defendant committed these offenses as a result of operating his motor vehicle recklessly.  However, the state advised the trial court it desired to argue the alcohol and cocaine found in the defendant's blood were factors which could be considered in determining whether the defendant was driving recklessly.

The defendant contends the trial court should have granted a mistrial when the state dismissed the alcohol-based counts of the indictment.  He also challenges the admissibility of evidence of alcohol and cocaine in his blood to establish the reckless prong of the offenses.  He refers to what occurred as an "ambush," and he states the admission of this evidence was akin to "explod[ing] an everlasting bombshell in the jury's mind."  He argues this evidence should have been excluded pursuant to Rule 404, Tennessee Rules of Evidence.

In State v. Braden, 867 S.W.2d 750 (Tenn. Crim. App.), per. app. denied (Tenn. 1993), Braden was charged with vehicular homicide and aggravated assault.  The trial court granted motions for judgment of acquittal on the alcohol-based counts, but, as here, held there was sufficient evidence to present the counts based on recklessness to the jury. Id. at 757. The court further held evidence establishing Braden had consumed alcohol before and at the time of the collision was admissible to establish Braden exhibited manifest extreme indifference to the value of human life in the counts predicated upon recklessness. Id. The defense moved for a mistrial based upon the prior admission of the evidence. The trial court denied the motion due to the admissibility of the evidence on the issue of recklessness. This court affirmed the trial court in this regard.  In ruling, this court

8

said:

> The trial court properly denied the appellant's motion for a mistrial. The appellant's consumption of intoxicating beverages before the collision and the percentage of alcohol in the appellant's blood was a factor that the jury could consider in determining whether the appellant was operating his motor vehicle "under circumstances manifesting extreme indifference to the value of human life." In other words, this evidence was both relevant and probative of this element of the offenses.

Id.

As in Braden, the evidence pertaining to the alcohol and cocaine content in the defendant's blood shortly after the collision was both relevant and probative of the element of recklessness.

This issue is without merit.

**III.**

The defendant contends the trial court committed error of prejudicial dimensions by permitting Sergeant Smith to testify as an accident reconstructionist. During the course of the trial, the defendant failed to challenge Sergeant Smith's qualifications to testify as an expert. He only objected to the admission of Trooper Russell's notes regarding measurements. This memorandum was not admitted into evidence. The defendant did not object to the conclusions reached by Sergeant Smith, namely, the defendant's truck was on the wrong side of the road and the impact was on the victims' side of the road.

In this court, the defendant argues Sergeant Smith should not have been permitted to offer an opinion based on Trooper Russell's measurements when Trooper Russell did not interpret her own findings.

The qualifications of an expert witness, the admissibility of the witness's testimony, the relevancy of the witness's testimony, and the competency of the expert testimony are matters which are addressed to the sound discretion of the trial court. State v. Ballard, 855 S.W.2d 557, 562 (Tenn. 1993). An appellate court will not interfere with the exercise of this discretion unless clear abuse appears on the face of the record. State v. Brimmer, 876 S.W.2d 75, 79 (Tenn. 1994). In this case, the trial court did not abuse its discretion by

9

permitting Sergeant Smith to testify and express his opinions. He possessed the requisite qualifications, education, training, experience, and knowledge of the facts surrounding the collision to reconstruct what occurred and relate his opinions to the jury.

Sergeant Smith was entitled to rely upon the measurements made by Trooper Russell on the date of the collision. The defendant did not present any evidence to establish these measurements were skewed. Nor did the defendant establish the measurements were untrustworthy.

This issue is without merit.

## IV.

The defendant contends the trial court committed error of prejudicial dimensions by failing to instruct the jury that Glenda Vaughn's failure to wear a seat belt contributed to her fatal injuries. He argues there is no statutory prohibition against instructing the jury a victim contributed to her own injuries. The defendant states in his brief, "[i]n fact, certain circumstances one can establish contributory negligence in civil actions for a failure to comply with the state law, not wearing seat belts." This court notes the Tennessee Supreme Court adopted comparative fault several years ago. See McIntyre v. Balentine, 833 S.W.2d 52 (Tenn. 1992).

This issue has been waived. The defendant has failed to cite any authority to support his argument on this issue. Tenn. R. App. P. 27(a)(7); Tenn. Ct. Crim. App. R. 10(b); State v. Brothers, 828 S.W.2d 414, 416 (Tenn. Crim. App. 1991), per. app. denied (Tenn. 1992). The reason for this default is obvious. None of the decisions addressing the question of applying contributory negligence or comparative negligence in a criminal case support the defendant's contention. See Fuston v. State, 215 Tenn. 401, 405, 386 S.W.2d 523, 525 (1965); Hurt v. State, 184 Tenn. 608, 613, 201 S.W.2d 988, 990 (1947); Hiller v. State, 164 Tenn. 388, 392, 50 S.W.2d 225, 226-27 (1932); Copeland v. State, 154 Tenn. 7, 10, 285 S.W. 565, 566 (1926); Lauterbach v. State, 132 Tenn. 603, 606, 179 S.W. 130, 131 (1915).

In this case, Glenda Vaughn did not commit any act which caused or contributed to

10

the violent collision between her automobile and the defendant's truck. She was a passenger in the automobile being driven by her son, Daniel Vaughn. Her death was the proximate result of the defendant operating his truck in a manner which he knew, or should have known, created a substantial risk of death or serious bodily injury to another person.

This issue is without merit.

## V.

The defendant next raises three issues concerning the sentences imposed by the trial court. He contends (a) the trial court should have applied certain mitigating factors in determining his sentences, (b) the sentences are excessive, and (c) he should have been given an alternative sentence to incarceration.

## A.

When an accused challenges the length and manner of service of a sentence, it is the duty of this court to conduct a de novo review on the record with a presumption that "the determinations made by the court from which the appeal is taken are correct." Tenn. Code Ann. § 40-35-401(d). This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). The presumption does not apply to the legal conclusions reached by the trial court in sentencing the accused or to the determinations made by the trial court which are predicated upon uncontroverted facts. State v. Smith, 891 S.W.2d 922, 929 (Tenn. Crim. App.), per. app. denied (Tenn. 1994). However, this court is required to give great weight to the trial court's determination of controverted facts as the trial court's determination of these facts is predicated upon the witnesses' demeanor and appearance when testifying.

In conducting a de novo review of a sentence, this court must consider (a) any evidence received at the trial and/or sentencing hearing, (b) the presentence report, (c) the principles of sentencing, (d) the arguments of counsel relative to sentencing alternatives,

11

(e) the nature and characteristics of the offense, (f) any mitigating or enhancing factors, (g) any statements made by the accused in his own behalf, and (h) the accused's potential or lack of potential for rehabilitation or treatment. Tenn. Code Ann. §§ 40-35-103 and -210; State v. Scott, 735 S.W.2d 825, 829 (Tenn. Crim. App.), per. app. denied (Tenn. 1987).

The party challenging the sentences imposed by the trial court has the burden of establishing the sentences are erroneous. Sentencing Commission Comments to Tenn. Code Ann. § 40-35-401; Ashby, 823 S.W.2d at 169. In this case, the defendant has the burden of illustrating the sentences imposed by the trial court are erroneous.

## B.

The trial court found the following enhancement factors for vehicular homicide:

> (1) The defendant has a previous history of criminal convictions or criminal behavior in addition to those necessary to establish the appropriate range;
> (3) The offense involved more than one victim;
> (7) The offense involved a victim and was committed to gratify the defendant's desire for pleasure or excitement;

Tenn. Code Ann. § 40-35-114.

As for the charge of aggravated assault, the court found the above enhancement factors applied plus the following:

> (9) the defendant possessed or employed a firearm, explosive device or other deadly weapon during the commission of the offense.

Tenn. Code Ann. § 40-35-114.

The trial court found no mitigating factors. The defendant had asked the court to find his conduct occurred under such unusual circumstances there was no sustained intent to violate the law. The trial court said the evidence showed "quite to the contrary." "[T]he defendant's behavior with an automobile over a span of 13 years [has] resulted in seven convictions for speeding; one for reckless driving; three other driving related offenses and one other offense involving an automobile yet not driving related. That is a total conviction of 11."

Additionally, the court found there had not been sufficient change in the defendant's

12

behavior since the collision to consider application of factor (13), which allows consideration of any other factor supported by the evidence. The trial court said the defendant's level of remorse did not demonstrate there had been a sufficient change in the defendant.

## 1.

The defendant first challenges the trial court's refusal to apply mitigating factor (13) in determining his sentence. In refusing to apply this mitigating factor, the court said it had considered the defendant's wife's testimony. Sue Martin testified the defendant had a history of not providing financially for his family. When he did earn money, he failed to pay taxes on what he earned. She told the court unless the situation changed, she could not continue in the marriage. Based upon her testimony and the arguments of defense counsel regarding the defendant's remorse,[1] the court said he had not seen a "sufficient change in the defendant's behavior since this accident to justify the court considering 40-35-113(13)."

The court's refusal to apply factor (13) was not error.

## 2.

The defendant next challenges the trial court's use of enhancement factor (3). The court's use of factor (3) was appropriate. The victims listed in the indictments were Glenda Vaughn (vehicular homicide) and Daniel Vaughn (aggravated assault). Also injured in the collision was Tony Rogers, a passenger in the defendant's truck. His injuries were not the basis for a criminal action against the defendant. Enhancement based upon his injuries was proper. State v. Norris, 874 S.W.2d 590, 601 (Tenn. Crim. App.), per. app. denied (Tenn. 1993).

The defendant does not challenge any of the other enhancement factors that were

---

[1] In an interview prior to his trial, the defendant told a presentence investigating officer that although he was in the center of the road, the Vaughns's car was also in the center of the road and headed into his lane. He did not testify at the trial or at his sentencing hearing.

13

applied.

**3.**

The state contends the trial court should have applied factor (10) regarding the defendant's lack of hesitation about committing a crime when the risk to human life was high. Tenn. Code Ann. § 40-35-114(10). The trial court considered factor (10) and opined he could not apply both factor (10) and factor (7) regarding gratification. The court reasoned the commission of a crime for excitement and gratification would be synonymous with having no hesitation to commit the crime.

Factors (7) and (10) have been applied together. See State v. James Lloyd Julian, Loudon County No. 03-C-01-9511-CV-00371, 1997 WL 412539 (Tenn. Crim. App., Knoxville, July 24, 1997); State v. Robert Kevin Moore, Putnam County No. 01-C-01-9606-CC-00255, 1997 WL 409481 (Tenn. Crim. App., Nashville, July 23, 1997); State v. Richard J. Crossman, Wilson County No. 01-C-01-9311-CR-00394, 1994 WL 548712 (Tenn. Crim. App., Nashville, October 6, 1994), per. app. denied (Tenn. January 3, 1995); State v. Thoma Shawn Noles and Michael Stanley, Rutherford County No. 01-C-01-9301-CC-00003 and No. 01-C-01-9301-CC-00005, 1993 WL 483318 (Tenn. Crim. App., Nashville, November 18, 1993), per. app. denied (Tenn. April 14, 1994).

This court will now consider whether application of factor (10) is appropriate. This court has held that factor (10) is inherent in the offense of aggravated assault. State v. David Cliff, Dyer County No. 02-C-01-9509-CC-00262, 1996 WL 551760 (Tenn. Crim. App., Jackson, September 30, 1996), per. app. denied (Tenn. March 10, 1997). Therefore, application of factor (10) is not appropriate for aggravated assault.

As for using factor (10) to enhance a sentence involving vehicular homicide, this court has held this enhancement factor should not be applied if the risk to life only endangered the victim. State v. Norris, 874 S.W.2d 590, 601 (Tenn. Crim. App.), per. app. denied (Tenn. 1993). See State v. Makoka, 885 S.W.2d 366, 373 (Tenn. Crim. App.), per. app. denied (Tenn. 1994). However, when the lives of other people are at risk due to the offense committed by the accused, this factor is applicable. State v. Dockery, 917 S.W.2d 258, 263 (Tenn. Crim. App. 1995) (this factor applied in DUI case due to the fact there was

14

a passenger in the accused's vehicle); Makoka, 885 S.W.2d at 373. More particularly, this enhancement factor has been applied in vehicular homicide cases when the accused places the life of a third party at risk. State v. Williamson, 919 S.W.2d 69, 83 (Tenn. Crim. App. 1995) (other citizens using the same highway as the accused); State v. Bingham, 910 S.W.2d 448, 453 (Tenn. Crim. App.), per. app. denied (Tenn. 1995) (other citizens using the same roadway as the accused); State v. Lambert, 741 S.W.2d 127, 134 (Tenn. Crim. App.), per. app. denied (Tenn. 1987) (other citizens using the same roadway as the accused); State v. Shane Wendall Yankee, Hawkins County No. 03-C-01-9507-CC-00200, 1996 WL 438792 (Tenn. Crim. App., Knoxville, August 6, 1996), per. app. denied (Tenn. February 3, 1997) (passenger in defendant's car and other driver using the same roadway as the accused).

There are two reasons which justify the trial court's use of factor (10) to enhance the defendant's sentence. First, the defendant had a passenger in his vehicle. The life of the passenger, Tony Rogers, was at risk due to the manner in which the accused drove his motor vehicle. Second, the defendant was being pursued by his friends in another pickup truck. That truck, carrying three other men, was also on the roadway in close proximity to the defendant's truck and traveling at a high rate of speed. The lives of those three men were at risk because of the defendant's behavior.

Thus, for the conviction of vehicular homicide, factors (1), (3), (7), and (10) were appropriate. For the conviction of aggravated assault, factors (1), (3), (7), and (9) were appropriate.

**C.**

The defendant next contends the court erred in the weight it assigned to enhancement factor (1) regarding the defendant's criminal behavior and criminal record. The defendant argues he has no felony record and has only been convicted of misdemeanors. The court said it took into account the defendant's traffic offenses and a reckless driving offense. The court noted the evidence indicated the defendant was using cocaine close to the time of the accident.

The presentence report indicates that over a 10-year period the defendant had been

cited for speeding five times, reckless driving, operating a motorcycle without a helmet, driving the wrong way on a one-way street, failing to have safety equipment on a motorcycle, and failing to stop where a stop was required. Additionally, another charge of reckless driving was reduced to a charge of speeding.

The defendant admitted he had used marijuana in the past. According to the defendant's presentence report, he admitted to using marijuana on a weekly basis up until the time of the wreck. He also admitted to using cocaine on "rare occasions."

The range for a Class C felony is three (3) to six (6) years. This court finds that the sentences imposed are both proper and reasonable based upon the circumstances of the offense and the enhancement factors.

**D.**

The defendant finally contends the court erred by failing to impose an alternative sentence.

**1.**

If an accused is convicted of a Class C, D, or E felony and is sentenced as either an especially mitigated offender or a standard offender, there is a presumption, rebuttable in nature, that the accused is a favorable candidate for alternative sentencing unless disqualified by some provision of the Tennessee Criminal Sentencing Reform Act of 1989. Tenn. Code Ann. § 40-35-102(6).

The sentencing process must necessarily commence with a determination of whether the accused is entitled to the benefit of the presumption. Ashby, 823 S.W.2d at 169; State v. Bonestel, 871 S.W.2d 163, 167 (Tenn. Crim. App. 1993). As the supreme court said in Ashby: "If [the] determination is favorable to the defendant, the trial court must presume that he is subject to alternative sentencing. If the court is presented with evidence sufficient to overcome the presumption, then it may sentence the defendant to confinement according to the statutory provision[s]." 823 S.W.2d at 169. The presumption can be successfully rebutted by facts contained in the presentence report, evidence presented by

16

the state, the testimony of the accused or a defense witness, or any other source provided it is made a part of the record. Bonestel, 871 S.W.2d at 167.

**2.**

In this case, the appellant was entitled to the presumption that he was a favorable candidate for alternative sentencing. However, as the trial court found, the state successfully rebutted the presumption.

The court stressed the defendant's traffic offenses involving the use of an automobile. Some of these offenses could have led to the maiming or killing of another person as well. The defendant, the court said, was an "accident waiting to happen."

The defendant's history indicates he did not support his family properly. The defendant's wife testified the defendant did not provide adequate financial support. When he did support his family financially, he failed to pay taxes on the money he earned. Thus, his obligations to society suffered.

The defendant dropped out of high school for no reason. His employment record was sporadic; he held jobs for only a few months at a time. He admitted to the regular use of marijuana and more occasional use of cocaine.

The court noted confinement via a concurrent sentence would adequately protect society as opposed to imposing a consecutive sentence. Confinement was also necessary to deter the defendant and others from committing such offenses. Tenn. Code Ann. § 40-35-103(1)(B). Confinement was also warranted to protect society by restraining the defendant who has a long history of criminal conduct, Tenn. Code Ann. § 40-35-103(1)(A), and to avoid depreciating the seriousness of the offenses, Tenn. Code Ann. § 40-35-103(1)(B). It further appears the defendant's potential for rehabilitation is slight, Tenn. Code Ann. § 40-35-103(5). The court noted the defendant had presented no evidence that he had changed his behavior since the accident.

The defendant has failed to carry his burden of illustrating the sentences imposed by the trial court were erroneous. The defendant was not entitled to an alternative sentence.

The issue is without merit.

_____
JOE B. JONES, PRESIDING JUDGE

CONCUR:


_____
WILLIAM M. BARKER, JUDGE


_____
JOE G. RILEY, JUDGE