IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs August 20, 2002

## JAMES DARRELL HORN v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Sullivan County**
**No. C44,651      R. Jerry Beck, Judge**

**No. E2001-02616-CCA-R3-PC**
**December 17, 2002**

The petitioner, James Darrell Horn, appeals the Sullivan County Criminal Court's denial of post-conviction relief. In his post-conviction petition, the petitioner challenged his jury convictions on more than 30 aggravated burglary counts and nearly as many theft counts. As a result of his many convictions, the petitioner is serving an effective 90-year sentence in the Department of Correction. On direct appeal, his convictions and sentences were affirmed by this court. *See State v. James D. Horn*, No. 03C01-9712-CR-00537 (Tenn. Crim. App., Knoxville, Jul. 20, 1999), *perm. app. denied* (Tenn. 2000). The petitioner asserted that his previous appellate counsel was ineffective because she did not raise on direct appeal whether the trial court (1) erred in not suppressing the petitioner's pretrial statements and (2) in not suppressing physical evidence seized during a warrantless search of his residence. He also claimed that his trial and appellate counsel were ineffective because they did not properly challenge the sufficiency of the evidence on three or four specific counts of the indictments. After an evidentiary hearing, the trial court entered a very thorough order denying post-conviction relief. Upon our review, we affirm.

**Tenn. R. App. P. 3; Judgment of the Criminal Court is Affirmed.**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the court, in which GARY R. WADE, P.J., and ROBERT W. WEDEMEYER, J., joined.

Larry S. Weddington, Bristol, Tennessee, for the Appellant, James Darrell Horn.

Paul G. Summers, Attorney General & Reporter; Angele M. Gregory, Assistant Attorney General; H. Greeley Wells, Jr., District Attorney General; and Teresa Murray Smith and James F. Goodwin, Assistant District Attorneys General, for the Appellee, State of Tennessee.

### OPINION

According to the records of the hearings on the petitioner's pretrial motions to suppress, which were admitted as evidence in the post-conviction evidentiary hearing, he moved prior to his 1997 trial to suppress his custodial pretrial statements and evidence of stolen property

discovered in his residence during a warrantless search. The motions emanated from the following activities of law enforcement personnel.

On May 31, 1995, Carter County Sheriff's officers, armed with a fugitive warrant for the arrest of the petitioner, arrived at the petitioner's residence on Anderson Road in Carter County. After they received no response to their knocking on the door, a car pulled into the driveway. It was driven by a woman, Linda McClain, who was accompanied by a child. McClain stated that she and the petitioner, whom she knew by an alias name, lived in the house. McClain did not know whether the petitioner was in the house at the time. She signed a form to consent to the officers' entering and searching the house, and she provided a key. The officers found no one inside the house but discovered it to be filled with "merchandise," including weapons, jewelry, musical instruments, and electronic equipment and supplies. The officers noticed that some of the items they saw matched property descriptions from Carter County burglary reports.

After an extensive chase and manhunt carried out during the night of May 31-June 1, 1995, Carter County officers apprehended the petitioner in the early morning hours of June 1. They took him to the jail and read his *Miranda* rights to him from a written form. *See Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602 (1966). The petitioner, who was alert and sober, signed a written waiver of his rights. Later, at about 11:00 a.m. on June 1, a Washington County officer who was investigating burglaries in that county came to the Carter County jail to interview the petitioner. He also read to the petitioner the *Miranda* rights from a written form, and the petitioner signed another waiver. The petitioner did not ask for an attorney and gave a statement about his involvement in a series of Washington County burglaries.

After hearing from the Carter County Sheriff's office that a man who may have been responsible for burglaries in Sullivan County was in custody, Sullivan County officers arrived in Carter County and went first to the residence on Anderson Road, which remained under the control of the Carter County officers. Inside the house, the Sullivan County officers identified various items that matched items on burglary reports from Sullivan County. Afterward, the Sullivan County officers went to the jail to interview the petitioner. At approximately 4:00 p.m., one of these officers administered an impromptu, but incomplete, *Miranda* warning to the petitioner, during or after which the petitioner said that he did not need to have his rights explained again and that he "didn't know how many times that day" the rights had been read to him. The petitioner was cooperative and did not ask to consult with an attorney. With the petitioner's consent and the Carter County Sheriff's approval, the Sullivan County officers took the petitioner to Sullivan County. They drove around, and the petitioner pointed out 22 residences in Sullivan County that he admitted burglarizing. Afterward, the officers took the petitioner to the Sullivan County Jail, where they *Mirandized* him at approximately 10:30 p.m. and obtained a written statement in which the petitioner discussed in detail the Sullivan County burglaries and thefts. On June 2, 1995, the petitioner made an initial court appearance in Carter County, and counsel was appointed to represent him in Carter County.

In the Sullivan County suppression hearings, the state relied upon the following evidence to support its claim that Linda McClain effectively consented to the May 31-June 1 search

of the Anderson Road house. The officers testified that she acknowledged that she and her children had lived in the house since early April, 1995. Utility records established that the electric service to the house was initiated by McClain on April 4, and the electric service agreement remained in her name through the end of May. McClain had a key to the house, which she gave to the Carter County officers after signing the consent-to-search form. Inside the house, officers discovered women's and children's clothing, as well as children's toys. On June 1, while Sullivan County officers were present at the house, McClain came with a pick-up truck to claim her belongings, which included children's bicycles in the yard and a cat which Ms. McClain retrieved from under the house. The petitioner admitted to one of the Sullivan County officers that McClain lived in the house, and in a statement given to police on June 16, 1995, the petitioner admitted that he and McClain had moved into the house on April 1.

The petitioner claimed in his suppression hearings that McClain lived elsewhere on May 31, 1995. The Carter County officer had written on the top of McClain's consent-to-search form an apartment address in Kingsport. He said that McClain provided this address, which she said was her mother's apartment, as a place where she could be reached. The Sullivan County officer testified at the suppression hearing that, on June 1, McClain gave him the Kingsport address as the address she was "moving to." Kingsport officers took a statement from McClain on June 2, 1995, in which she listed the Kingsport apartment as her address.

After conducting the first suppression hearing, the trial court suppressed the statements given to the Sullivan County officers; however, after allowing the state to re-open the suppression hearing and after hearing additional evidence about *Miranda* warnings which were given to the petitioner prior to the Sullivan County officers' arrival at the Carter County Jail on June 1, the trial court vacated its ruling and denied the motion to suppress the pretrial statements. The court held that the petitioner's *Miranda* interests were satisfied by the prior warnings.

The trial court also denied the motion to suppress the evidence of Sullivan County stolen property being discovered at the Anderson Road house. The court found that McClain gave a valid, effective consent to search the house on May 31 and that she did not move to the Kingsport apartment until June 1.

The petitioner's trial counsel, who was a member of the Public Defender's staff, testified at the post-conviction evidentiary hearing that he preserved both suppression issues in the petitioner's motion for new trial. He thought that the two suppression issues would be important appellate issues. The Public Defender's office contracted through the Public Defender's Conference for an attorney to handle the direct appeal. Trial counsel did not confer with appellate counsel but did note the suppression issues on his referral form. Trial counsel learned from reading this court's opinion in the petitioner's direct appeal that appellate counsel did not raise the suppression issues.

The petitioner's counsel on direct appeal testified that she received and reviewed the referral form that trial counsel had furnished and that she was fully aware of the suppression issues. She reviewed the appellate record, which included the technical record of filings in the trial court

clerk's office and the extensive transcript of evidence from the trial. Upon researching the applicable law, appellate counsel determined that the "case law was entirely against Mr. Horn's position [on the suppression of pretrial statements]." She testified, "I think the judge did rule correctly." Likewise, on the consent search issue, she determined after doing legal research that she "did not have any good faith basis for attacking [the ruling denying suppression] at that point because the case law was all against us and the reason [] was very sound and cogent in those cases that [she] looked at." She testified that, based upon her independent judgment, she did not include the suppression issues in the appeal, raising instead the issues of sufficiency of the evidence and the impropriety of the sentences. She admitted that she was compensated for her contract appellate services at a monthly rate of $1,500 and was not compensated by the hour. She also acknowledged that she did not discuss the appeal with the petitioner's trial counsel.

During the hearing, post-conviction counsel argued that, with respect to aggravated burglary counts fourteen and fifteen in the charging instrument, the state proved only burglary at trial; the buildings burglarized were not inhabited at the time. *Compare* Tenn. Code Ann. § 39-14-402(a)(1) (1997) (proscribing burglary as the unlawful entry into "a building other than a habitation" with intent to commit a felony, theft or assault) *with id.* § 39-14-403(a) (1997) (proscribing aggravated burglary as burglary of a habitation as defined in §§ 39-14-401 and 39-14-402). Thus, post-conviction counsel argued that trial and appellate counsel were ineffective in not raising this issue in the motion for new trial and on direct appeal. Post-conviction counsel also argued that, with respect to a burglary and theft involving a victim named Willis Faulkner, the serial numbers of the victim's stolen pistol did not match the pistol recovered by officers and attributed to the Faulkner theft. Counsel again posited that trial counsel was ineffective in failing to raise this issue.

Following the evidentiary hearing, the post-conviction court entered an extensive order that contained findings of fact and conclusions of law. The court held that its pretrial rulings on the suppression issues were correct and that appellate counsel was not ineffective in deciding not to raise the issues on appeal. The court ruled that the proof on counts fourteen and fifteen (case number S38,125) showed that the burglarized buildings met the applicable statutory definition of habitation, and that, accordingly, the petitioner was properly convicted of aggravated burglary on those counts. As to the Faulkner pistol issue, the court found that the petitioner did not establish a discrepancy in the serial numbers. Accordingly, the court denied post-conviction relief.

Petitioners seeking post-conviction relief must prove their allegations by "clear and convincing evidence." Tenn. Code Ann. § 40-30-210(f) (1997). "Evidence is clear and convincing when there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence." *Hicks v. State*, 983 S.W.2d 240, 245 (Tenn. Crim. App. 1998) (citing *Hodges v. S.C. Toof & Co.*, 833 S.W.2d 896, 901 n.3 (Tenn. 1992)). Furthermore, an appellate court is bound by a trial court's findings of fact unless the facts of record preponderate against those findings. *Id.* at 245.

When seeking post-conviction relief on the basis of ineffective assistance of counsel, a petitioner must establish that the services rendered or the advice given fell below "the range of

competence demanded of attorneys in criminal cases." *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975). He or she must also show that there is a reasonable probability that but for counsel's deficient performance, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 694, 104 S. Ct. 2052, 2067 (1984); *Goad v. State*, 938 S.W.2d 363, 370 (Tenn. 1996). Both of the above prongs must be established for a petitioner to be entitled to relief. *Goad*, 938 S.W.2d at 370.

Generally, a petitioner may not criticize a sound, though unsuccessful, tactical decision made during the course of the proceedings. *Adkins v. State*, 911 S.W.2d 334, 347 (Tenn. Crim. App. 1994). However, this deference to the tactical decisions of counsel only applies to those choices made after adequate preparation for the case. *Cooper v. State*, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992).

These "principles apply as well when determining the effectiveness of appellate counsel." *Campbell v. State*, 904 S.W.2d 594, 596 (Tenn. 1995). In reviewing the services of appellate counsel, our supreme court has "reiterate[d] that there is no constitutional requirement that an attorney argue every issue on appeal. Generally, the determination of which issues to present on appeal is a matter which addresses itself to the professional judgment and sound discretion of appellate counsel." *Id.* at 596-97 (citations omitted). When the selection of issues to be raised on appeal can be characterized as tactical or strategic choices, appellate counsel should not be "second guessed," as long as such choices are based upon competent preparation. *Id.* at 597.

With these governing principles in mind, we now examine the issue of ineffective assistance of counsel with respect to the following claims.

## I. *Miranda* Issue.

The post-conviction court determined that, despite the Sullivan County officers' failure to administer a complete *Miranda* warning on the afternoon of June 1, 1995, the petitioner's subsequent statements relative to the Sullivan County cases were admissible because the *Miranda* warnings administered on the morning of June 1 by Carter County officers and again by Washington County officers sufficed to satisfy the *Miranda* requirements as to the admissibility of statements later received by the Sullivan County officers. In essence, the post-conviction court held that the petitioner's appellate counsel did not deficiently perform when she exercised her professional judgment not to raise the issue of *Miranda*-poor statements on appeal.

The record supports the lower court's determination. This court has previously held that, in situations similar to the present case, a prior *Miranda* warning and commensurate waiver may pave the way to admit later statements that were not immediately preceded by a repeated *Miranda* warning. *See State v. J.B. McCord,* No. 03C01-9403-CR-00110, slip op. at 12-13 (Tenn. Crim. App., Knoxville, Dec. 3, 1997) (defendant's second statement admissible, despite officers' failure to repeat earlier *Miranda* warnings, when record showed no police misconduct and that defendant effectively waived his *Miranda* rights in giving the second statement when he "was aware

of the nature of his constitutional rights and had an adequate understanding of their importance"); *State v. Pride*, 667 S.W.2d 102, 104 (Tenn. Crim. App. 1983) ("Our law recognizes that an accused need not be given repeated *Miranda* warnings once he has been advised of his rights and has waived them."); *State v. Hicks*, 629 S.W.2d 908, 910 (Tenn. Crim. App. 1981) (defendant's statement given three hours after *Miranda* warnings held to be admissible); *Reaves v. State*, 523 S.W.2d 218, 220 (Tenn. Crim. App. 1975) ("When a defendant has been fully advised of his *Miranda* rights, it is not necessary to repeat them *on the following day* before interrogation.") (emphasis added).

In the present case, there was no evidence of police misconduct, and in the suppression hearings, the trial court found no misconduct.[1] Although the Sullivan County officers did not completely advise the petitioner of his *Miranda* rights on the afternoon of June 1, their imperfect rendition served to remind the petitioner of his rights; the reminder evoked a declaration by the petitioner that he had been fully, if not excessively, advised of his rights. Had this issue been raised on direct appeal, this court would have been constrained to hold that the petitioner's statements given to the Sullivan County officers were admissible as a result of the petitioner receiving fully effective *Miranda* warnings and formally waiving his *Miranda* rights – not once, but twice – a few hours earlier.

Accordingly, it is clear to us that the petitioner's appellate counsel acted well within the ambit of her professional judgment – and did not deficiently perform – when she omitted the *Miranda* issue from the direct appeal.

## II. Search Issue.

Now, we examine the claim that appellate counsel ineffectively assisted the petitioner when she omitted the issue of the search of the Anderson Road house from the appeal. The post-conviction court found that Linda McClain was a resident of the property where the search was conducted and held that under the facts surrounding Linda McClain's consent to the search of the house, the search was reasonable.

We agree. A person with common authority over a residence may validly consent to the search of that residence, effectively supplying reasonableness to the officers' warrantless entry and search. *See McGee v. State*, 451 S.W.2d 709, 712 (Tenn. Crim. App. 1969). The United States Supreme Court has said,

> The authority which justifies the third-party consent does not rest upon the law of property . . . but rests rather on mutual use of the property by persons generally having joint access or control for most purposes, so that it is reasonable to recognize that any of the co-

---

[1] In the evidentiary hearing, the petitioner claimed that the officers promised that, if he cooperated, his multiple sentences could be served concurrently. The officers denied this allegation. The post-conviction court found no police trickery or misconduct.

-6-

inhabitants has the right to permit the inspection in his own right and that the others have assumed the risk that one of their number might permit the common area to be searched.

*United States v. Matlock,* 415 U.S. 164, 172 n.7, 94 S. Ct. 988, 993 n.7 (1974). The state may fulfill its burden of proving the reasonableness of a warrantless search by showing either that a person with common authority consented to the search or that the circumstances warranted a person of "reasonable caution" to believe that the consenting party in fact had common authority over the premises. *State v. William Donald Ellis*, No. M-1999-783-CCA-R3-CD, slip op. at 8 (Tenn. Crim. App., Nashville, Oct. 13, 2000) (citing *Illinois v. Rodriguez*, 497 U.S. 177, 188-89, 110 S. Ct. 2793, 2801 (1990)), *perm. app. denied* (Tenn. 2001).

In fact, the very search at issue in the present case has been the subject of a previous adjudication by this court. In *State v. James Darrell Horn*, No. 03C01-9810-CR-00363 (Tenn. Crim. App., Knoxville, Jan. 26, 2000), *perm. app. denied* (Tenn. 2001), this court reviewed McClain's consent and the reasonableness of the resulting search as part of the petitioner's direct appeal from Washington County convictions of aggravated burglaries.[2] *Id.*, slip op. at 2. In that case we concluded that the Washington County trial court did not err in denying the motion to suppress the evidence gained through the house search. *Id.*, slip op. at 9. "The evidence," this court said, "indicates that McClain did have common authority over the premises . . . for most purposes such that other co-inhabitants . . . assumed the risk that she might allow the premises to be searched." *Id.* If not conclusive in the present case, this ruling in the petitioner's Washington County case is most persuasive.

Once again the result is that the petitioner's appellate counsel acted within the ambit of her professional judgment when she declined to raise the search issue in the direct appeal. Had she done so, the appellate court would have been constrained to affirm the trial court's decision to deny suppression. Appellate counsel, therefore, did not render ineffective assistance in this instance.

Before leaving the topic of the house search, we note that, in his brief, the petitioner argues that *trial* counsel was remiss in two instances. First, he claims that trial counsel did not develop evidence at the suppression hearings that Linda McClain, who was apparently in state custody and did not testify at the suppression hearings, had no authority to consent to the search. The petitioner is also aggrieved that trial counsel did not advance in the suppression hearings the argument that the officers exceeded the scope of their search, that being to locate the petitioner for

---

[2]The proof of McClain's common authority over the residence in this Washington County case was somewhat different from that relied upon by the state in the present case. Although the owner of the rented house on Anderson Road testified about the joint occupancy of the petitioner and McClain, McClain herself testified at the suppression hearing that she had no key to the house and could only enter through an unlocked window. *Id.*, slip op. at 5-6. She also testified that she received mail at the Kingsport apartment, which she had rented a few weeks prior to staying with the petitioner. *Id.* The Carter County officers who executed the search and who testified at the suppression hearing in the present case apparently testified in a substantially similar manner in the Washington County suppression hearing.

the purpose of serving a fugitive warrant. Assuming that these issues were adequately raised in the post-conviction court, we discern no basis for post-conviction relief.

In the post-conviction hearing, the petitioner failed to demonstrate that any further development of McClain's authority to consent to the search would have yielded a different result on the suppression issue. Indeed, this court's opinion in the petitioner's Washington County direct appeal shows that when McClain testified in the suppression hearing in that case, she revealed her common authority over the premises, even though she denied ever having a key. Thus, the petitioner did not – and apparently was not able to – establish that he was prejudiced by trial counsel's failure to further develop McClain's co-inhabitant status in his Sullivan County case.

In like manner, the evidentiary hearing revealed no prejudice to the petitioner in that his trial counsel did not raise the issue in the suppression hearing that, in discovering stolen property, the officers exceeded the scope of their search for the petitioner himself. First, we find no suggestion that McClain consented to only a search of limited scope. Second, the proof in the suppression hearings showed that the stolen merchandise was stacked and piled everywhere and literally filled the rooms in the house. Under these circumstances, we can imagine no prejudice to the petitioner resulting from counsel's failure to mount a scope-of-the-search attack.

### III. Pistol Identification.

Next, we review the claim that trial counsel deficiently performed when he failed to check the serial number on a .45 caliber pistol that was allegedly stolen from the home of Willis Faulkner. The petitioner alleged in his post-conviction petition that the serial number of Faulkner's pistol did not match the numbers on the .45 discovered in the petitioner's possession. The post-conviction court held that the petitioner failed to establish this claim in the evidentiary hearing. We agree. The petitioner is entitled to no relief on this issue.

### IV. Habitation Issue.

The final issue is whether trial and appellate counsel were ineffective because they respectively failed to raise the issue whether the defendant was guilty of aggravated burglary in counts fourteen and fifteen (case number S38,125) or guilty of mere burglary. The petitioner alleged in his post-conviction petition that the buildings he burglarized in these counts were not used as habitations at the time of the burglary, defeating the enhancement of the crime to aggravated burglary. *See* Tenn. Code Ann. §§ 39-14-402, -403 (1997). The post-conviction court held that the proscriptive statutes do not require that the burglarized structure be used as a habitation to support an aggravated burglary conviction. The court further held that the proof at trial established aggravated burglary in these counts.

Burglary is aggravated when the offender enters a "habitation as defined in §§ 39-14-401 and 39-14-402." *See id.* § 39-14-403. In pertinent part, Code section 39-14-401(1) provides:

"Habitation":

> (A) Means any structure, including buildings, module units, mobile homes, trailers, and tents, which is designed or adapted for the overnight accommodation of persons; . . . .

*Id*. § 39-14-401(1). This court has previously said, "There is no requirement in this definition that the structure be currently occupied to be a habitation." *Theodore Howard v. State*, No. 02C01-9806-CR-00191, slip op. at 6 (Tenn. Crim. App., Jackson, Dec. 29, 1999). Indeed, "based on common understanding and judicial interpretation, a vacant house is clearly included within our statutory definition of 'habitation . . . .'" *Id.*, slip op. at 8; *see also State v. James Ford III*, No. 02C01-9304-CR-00078 (Tenn. Crim. App., Jackson, Aug. 3, 1994).

The petitioner claims that the "mobile home on a commercial lot for display" that he burglarized is not a habitation. The post-conviction court held that, although the proof in counts fourteen and fifteen was not "detailed," it showed that the structure burglarized by the petitioner was *designed* for the overnight accommodation of persons. We agree and discern no ineffective assistance of trial or appellate counsel in not specifically raising this issue.

Having addressed the issues presented in this appeal, we affirm the judgment of the post-conviction court.

_____
JAMES CURWOOD WITT, JR., JUDGE